**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | Civil Action No. 4:24-cv-4423 |
| vs. | §<br>§ | JURY TRIAL DEMANDED |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., a Florida Profit Corporation, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants*. | §<br>§ | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Kelly Cook and Esther Kelley-Cook allege claims against Defendants Progressive Casualty Insurance Company ("Progressive") and The Law Offices of Kanner & Pintaluga, P.A. (INC) ("K&P") in this Class Action Complaint. Plaintiffs allege claims for barratry, conspiracy, and statutory violations, including Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq*. ("RICO"); Texas's Deceptive Trade Practices Act, Tex. Bus. Com. Code § 17.01, *et seq*. ("DTPA"); and Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq*. ("DPPA"). Plaintiffs' claims are based on personal knowledge with respect to their own acts, and upon information and belief based on facts obtained through investigation conducted by their counsel.

## I.     NATURE OF ACTION

1.     Each year, tens of thousands of people in the United States are involved in motor vehicle crashes. When these crashes occur, victims typically resolve related issues directly with the other driver, through insurance, or, if necessary, through litigation. When a victim reports a

motor vehicle crash to their insurance provider, they rightfully expect the insurer to manage the claim—not to share their personal information with a law firm for solicitation purposes. Such actions, where an insurance provider collaborates with a law firm to exploit crash victims for financial gain, constitute barratry and are, in fact, illegal.

2. This is a class action lawsuit against a law firm and an insurance company, alleging they illegally shared crash victims' personal information for solicitation—a practice known as barratry. Plaintiffs, along with others similarly affected, were contacted by Kanner & Pintaluga ("K&P") after reporting their motor vehicle crashes to Progressive.

3. The suit is filed on behalf of two classes of people who were involved in vehicle collisions, or whose vehicle was, Progressive provided auto insurance to any vehicle involved, and, after reporting a motor vehicle crash, were contacted by K&P between November 11, 2020, and the date of this filing, inclusive (the "Classes"). The action seeks damages for Plaintiffs and future Class Members, asserting claims under common law, state consumer protection laws, and federal statutes, including RICO, against both Progressive and K&P.

4. On or around October 3, 2024, the parents of Kelly Cook were involved in a motor vehicle crash while driving a vehicle belonging to Kelly Cook and Esther Kelley-Cook. The crash resulted in only minor property damage, and the other driver was clearly at fault.

5. What followed this simple no-injury collision was both illegal and unethical under Texas legal ethics rules. Two days after the crash, Mr. Cook received an unsolicited call from K&P, offering legal representation related to the motor vehicle crash, along with a promise of a minimum recovery of $10,000. On October 22, 2024, K&P also contacted Dr. Kelley-Cook with an unsolicited offer of legal representation, disclosing that Progressive had provided Plaintiffs' contact information to K&P under an agreement between the two companies.

6.      Plaintiffs assert that Defendants acted with full knowledge of their wrongdoing. Evidence of this intent includes K&P's admission to Dr. Kelley-Cook that an agreement with Progressive allowed the insurer to transfer crash victims' personal information to K&P once a motor vehicle crash was reported.

7.      Plaintiffs and others in the Classes seek justice for being exploited through Defendants' fraudulent client-solicitation scheme. By contacting Plaintiffs and thousands of other crash victims without consent, Defendants profited illegally from this venture. Plaintiffs, on behalf of themselves and the Classes, seek statutory damages, including those available under Tex. Gov't Code Ann. § 82.0651, as well as actual damages and reasonable attorney's fees.

## II.      SUBJECT MATTER JURISDICTION AND VENUE

8.      This is a class action for RICO and DPPA claims arising under federal law. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. This controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 Class Members in each Class, members of the Classes are citizens of a State different from Defendants, Class Members may be a citizen or subject of a foreign state, and Defendants are citizens of a state. 28 U.S.C.A. § 1332(d)(2)(A-B). The Classes alleged are likely to have greater than $5,000,000 in damages, as pleaded below, and include Members who are foreign state citizens. The Court has subject matter jurisdiction over the state law claims under 28 U.S.C.A. § 1367.

9.      The Court has personal jurisdiction over each of Defendants because each either conducts business in and maintains operations in this District, is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Further, there is an affiliation between the contacts directed at Texas and the controversy. (i.e., that by giving out Texas driver's info, or soliciting Texas plaintiffs, the out-of-state's activities in Texas are directly related to the issues they are being sued for).

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b). The claims asserted here arose in this District; a substantial part of the activities, conduct, or damages giving rise to the claims occurred in this District; Defendants have substantial contacts with this District; and Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

### III.     MISNOMER / ALTER EGO

11.     In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named here. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.     PRINCIPAL-AGENT LIABILITY

12.     All allegations here of acts or omissions by Defendants include, but are not limited to, acts and omissions of such Defendants' officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiffs allege that such acts and omissions were committed or made with express and/or implied authority of Defendants or were ratified or otherwise approved by the same Defendants; or otherwise, that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment, as the case may be.

## V. PARTIES

### A. CO-LEAD CLASS PLAINTIFFS

13.     Plaintiff Kelly Cook is an individual residing in Harris County, Texas. He was contacted by K&P after his vehicle was involved in a motor vehicle crash and that crash was reported solely to Progressive. He may be contacted through his counsel, the undersigned law firm.

14.     Plaintiff Esther Kelley-Cook is an individual residing in Harris County, Texas. She was contacted by K&P after her vehicle was involved in a motor vehicle crash and that crash was reported solely to Progressive. She may be contacted through her counsel, the undersigned law firm.

### B. DEFENDANTS

15.     Defendant Progressive Casualty Insurance Company is an Ohio insurance company located at PO Box 89490, Cleveland, Ohio 44101-6490. Progressive may be served through its Registered Agent C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

16.     Defendant The Law Offices of Kanner & Pintaluga, P.A. (INC) is a Florida-based law firm doing business in Houston, Texas. K&P is headquartered at 925 South Federal Highway 6th Floor Boca Raton, FL 33432-33432. K&P may be served through its Registered Agent Corporate Creations Network, Inc. at 5444 Westheimer #1000, Houston, TX 77056.

17.     The unethical, illegal, and fraudulent efforts by the Progressive and K&P representatives resulted in K&P obtaining clients that the firm could not otherwise fairly nor ethically obtain, resulting in K&P collecting substantial sums of money from settlements of many cases originating from the conduct using nonlawyer case-runners in the form of Progressive. K&P uses money so derived together with a pattern of activity through the U.S. Mail and interstate wire or radio communications to establish, operate, conduct, and participate in the same ongoing illegal

and unethical activities. K&P illegally and unethically offers incentives to clients and uses such incentives as improper leverage to control clients.

## VI.     FACTUAL ALLEGATIONS

18.     On or around October 3, 2024, Kelly Cook and Esther Kelley-Cook's vehicle was involved in a motor vehicle crash causing some vehicle damage (the "Incident"). The Incident was reported to Progressive Insurance, the insurer for the at-fault driver. What happened following the crash is illegal, fraudulent, and prohibited by the ethics rules governing Texas attorneys.

19.     On or around October 5, 2024, just days later, Dr. Kelley-Cook received a call asking about the car crash. She passed the caller to her husband, because he is a personal injury attorney who is more experienced and knowledgeable about dealing with insurance. Much to his surprise, Mr. Cook quickly realized the caller was not calling from Progressive. Instead, the caller was soliciting Mr. Cook to bring claims for any injuries he may have sustained in the crash. Mr. Cook was told that he would get a minimum of $10,000 for retaining the caller's firm and that if more people were in the vehicle, they could all make claims as well.

20.     On October 22, 2024, the law firm called Dr. Kelley-Cook, again offering unsolicited legal representation related to the October 3rd motor vehicle crash. This time, the law firm's representative told Dr. Kelley-Cook he worked for K&P and that Progressive gave K&P the Plaintiffs' phone numbers under an agreement between Progressive and K&P.

21.     Each Defendant has systematically violated at least one of the following statutes and rules:

    a.    Texas Penal Code §38.12(a)(2) (solicited employment in person for himself or another);

    b.    Texas Penal Code §38.12(a)(4) (paid or provided value to others to solicit employment);

    c.    Texas Penal Code §38.12(b)(1) (knowingly financed solicitations);

<ol type="a" start="4">
<li>Texas Penal Code §38.12(b)(3) (knowingly accepted employment that resulted from the wrongful solicitation of prospective clients);</li>
<li>Texas Penal Code §38.12(d)(1)(2)(E) (provided or knowingly permitted solicitations of prospective clients that involved coercion, duress, overreaching, harassment, intimidation, or undue influence);</li>
<li>Texas Penal Code §38.12(d)(1)(2)(F) (provided or knowingly permitted solicitations of prospective clients that contained a false, fraudulent, misleading, deceptive, or unfair statement or claim);</li>
<li>Disciplinary Rule 7.03(a) (solicited prospective clients);</li>
<li>Disciplinary Rule 7.03(b) (paid, gave, or offered to pay or give, something of value to non- lawyers for soliciting prospective clients for a lawyer or law firm);</li>
<li>Disciplinary Rule 7.03(c) (paid, gave, advanced, or offered to pay, give, or advance, something of value to another person for soliciting prospective clients for a lawyer or law firm); and</li>
<li>Disciplinary Rule 7.03(d) (entered into an agreement for, charged for, or collected a fee for professional employment obtained as a result of wrongful solicitation).</li>
</ol>

22.     On information and belief, Defendants conspired to, and committed, barratry. Due to these unconscionable practices, Defendants must pay $10,000 in statutory penalties to each Plaintiff and each person similarly situated. Moreover, for each person similarly situated who actually retained K&P, Defendants ~~should~~ must also disgorge any revenue, profits, or any other gains from their fraudulent scheme to those similarly situated people. Defendants are therefore civilly liable for damages and penalties under Texas Government Code Section 82.0651.

23.     Defendants knew or should have known that they were engaging in illegal activities through their barratry. Defendants acted with reckless disregard when they exchanged motor vehicle crash victim's personal information to solicit employment for legal claims. As such, Defendants are responsible for Plaintiffs' damages, as well as the damages suffered by those similarly situated.

# VII.     CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil

Procedure on behalf of two classes tentatively defined as:

**UNSOLICITED CALLS CLASS:**

**All persons and entities involved in, or who's vehicle was involved in, a motor vehicle crash reported to Progressive and were, thereafter, contacted by K&P from November 11, 2020, through the original filing date of this suit, November 11, 2024, inclusive (the "Unsolicited Calls Class").**

**DPPA CLASS:**

**All persons and entities who reported a motor vehicle crash claim to Progressive who then provided their vehicle information to a third party between November 11, 2020, through the original filing date of this suit, November 11, 2024, inclusive (the "DPPA Class").**

25.     Excluded from the class definitions are any employees, officers, directors of Defendants, and attorneys appearing in this case, and any judge assigned to hear this action. Plaintiffs reserve the right to modify these class definitions as they obtain relevant information.

26.     The proposed classes can be identified through Defendants' records and publicly filed lawsuits by K&P, among other information.

27.     On information and belief, there are thousands of potential Class Members in the United States. Accordingly, the number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

28.     Lead Plaintiffs are members of the proposed classes.

**<u>Commonality</u>**

29.     Commonality. *Fed. R. Civ. P. 23(a)(2)*. There are questions of fact common to the Putative Classes, and those questions predominate over questions affecting any individual Putative Unsolicited Calls or DPPA Class Member. Common questions of fact include but are not limited

to:

    a.    Whether Defendants engaged in the wrongful conduct alleged herein;

    b.    The nature, scope and implementation of Defendants' unlawful, improper acts;

    c.    Whether Progressive, or its agent, provided Class Members' personal information to K&P without permission;

    d.    Whether Defendants committed barratry by violating Section 38.12(a) or (b) of the Texas Penal Code;

    e.    Whether Defendants fraudulently promoted products or services in violation of the DTPA;

    f.    Whether Defendants made any false representations to their consumers, and whether Defendants knew those representations to be false, or whether those assertions were made recklessly and without adequate investigation of their truth or falsity;

    g.    Whether Defendants intended to obtain economic benefit from their actions;

    h.    Whether Defendants received revenues from their fraudulent venture, and the number of those revenues;

    i.    Whether Defendants conspired with one another to violate Texas barratry laws;

    j.    Whether K&P is owned and operated by lawyers;

    k.    Whether Progressive, or its agent, knowingly disclosed Plaintiffs' and other Class members' Driver's License Information to K&P; and

    l.    Whether Defendants will likely continue their solicitation and barratry practices unless enjoined from doing so.

30.    There are questions of law common to the Putative Unsolicited Calls and DPPA Classes, and those questions predominate over questions affecting any individual Putative Unsolicited Calls and DPPA Class Members. Common questions of law include but are not limited to:

    a.    Whether Defendants' conduct in (1) making false representations about Barratry, (2) exchanging crash victims' personal information, and (3) acting unethically, constitute acts of fraud;

b.  Whether Defendants' conduct common to the Putative Classes has resulted or will result in Defendants being enriched at the expense of Putative Class Members, or in Defendants retaining a benefit to the detriment and loss of Putative Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

c.  Whether Defendants' conduct common to the Putative Classes demonstrates willfulness, malice, or recklessness, or whether Defendants proceeded with conscious disregard for the rights of others, therefore entitling Putative Class Members to punitive damages;

d.  Whether K&P's veil should be pierced;

e.  Whether Defendants entered into contracts, charged for, or collected any fees for employment obtained in violation of Texas Disciplinary Rule of Professional Conduct 7.03(a), (b) or (c);

f.  Whether Defendants are liable under Texas Government Code §82.0651;

g.  Whether Defendants had a duty to act ethically, and whether Defendants violated that duty;

h.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, or injunctive relief and, if so, in what nature and amount; and

i.  whether Progressive, or its agent, knowingly disclosed Plaintiffs' and other Class Members' Driver's License Information to K&P for a purpose not permitted under the DPPA.

## Typicality

31.  Typicality. *Fed. R. Civ. P. 23(a)(3)*. Lead Plaintiffs' claims are typical of the claims of the Putative Unsolicited Calls and DPPA Class Members. Lead Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Lead Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the Putative Unsolicited Calls and DPPA Classes.

## Adequacy

32.  Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Lead Plaintiffs are adequate representatives of the proposed Putative Unsolicited Calls and DPPA Classes because their interests coincide with

and are not antagonistic to, the interests of the other Plaintiffs and Members of the Putative Unsolicited Calls and DPPA Classes they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The non-lead Plaintiffs have no interests antagonistic to or conflicting with those of the Classes. Lead Plaintiffs and their Counsel will fairly and adequately protect the interests of the Members of the Putative Unsolicited Calls and DPPA Classes.

**Superiority**

33.     Superiority. *Fed. R. Civ. P. 23(b)(3).* Questions of law and fact common to the Putative Unsolicited Calls and DPPA Class Members predominate over questions affecting only individual Members, and class actions are superior to other available methods for fair and efficient adjudication of controversies. Liability will be determined based on a common set of facts and legal theories. Willfulness and scienter will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the Putative Unsolicited Calls and DPPA Class Members.

34.     The damages sought by each Member are such that individual prosecution for a majority of the Members would prove burdensome and expensive given the complex and extensive litigation required by Defendants' conduct—and would be burdensome and expensive on the federal judiciary system to resolve multiple litigations based on the same facts as a single class action. It would be almost impossible for Members of the Putative Unsolicited Calls and DPPA Classes individually to redress effectively the wrongs done to them. Even if the Members of the Putative Unsolicited Calls and DPPA Classes themselves could afford such individual litigation, it would still be an unnecessary burden on the courts.

35.     Furthermore, individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in one case.

## VIII. CAUSES OF ACTION

### A. COUNT ONE: BARRATRY

36.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

37.     Defendants have repeatedly and systematically violated the Texas Penal Code §38.12 and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. Their violations include, but are not limited to, having: (1) K&P paid salespeople or representatives solicit prospective clients to sign a contract for legal services with intent to obtain an economic benefit; (2) K&P accepted employment that resulted from the solicitation of prospective clients; (3) K&P paid, given, or offered to pay or give anything of value to people not licensed to practice law for soliciting prospective clients (Progressive) for, or referring clients or prospective clients to K&P; (4) K&P solicited prospective clients through overreaching, harassment, or undue influence; (5) K&P solicited prospective clients with a false, fraudulent, misleading, deceptive, or unfair statement or claim; and/or (6) entered into agreements for, charged for, or collected a fee for professional employment obtained as a result of the wrongful solicitation of prospective clients.

38.     Thus, Defendants are liable to Plaintiffs and those similarly situated under Texas Government Code §82.0651(a) and (c).

39.     Defendants are liable to Plaintiffs and those similarly situated for all fees and expenses Plaintiffs and those similarly situated paid to Defendants, and reasonable and necessary attorney's fees. Tex. Gov. Code §82.0651(b) and (d). Plaintiffs and those similarly situated are

further entitled to recover a statutory penalty of $10,000 from each person who engaged in the subject barratry. *Id.*

40.     Texas Government Code §82.0651 is to be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection. This class action is filed to precisely that end.

**B.     COUNT TWO: CONSPIRACY**

41.     Plaintiffs incorporate by reference the above paragraphs of this Complaint as if fully set forth here.

42.     Defendants agreed and conspired to solicit Plaintiffs and those similarly situated. By engaging in the conduct described more fully above, Defendants acted in concert. Defendants intended and knew that the agreed acts would result in harm to Plaintiffs and the Class Members, because they knew their sales scheme violated advertisement rules for lawyers. They also knew the solicitations violated the Texas barratry statute, the prospective clients had not previously sought the advice of K&P and because they knew few, if any, would ever need a lawyer for the services purportedly provided by Defendants or any other lawyers. Defendants needed to abide by the same barratry rules all Texas lawyers are but have intentionally tried to skirt them through their referral scheme.

43.     Defendants' acts and omissions in furtherance of their conspiracy proximately caused harm and damages to Plaintiffs and those similarly situated by attempting to induce them to pay fees to Defendants and infringing on their time that could have otherwise been used toward anything else. Plaintiffs and those similarly situated seek to recover all their actual, direct and consequential damages, general and special damages, and statutory penalties for Defendants' conspiracy.

44.     Defendants acted jointly, in concert, or in a conspiracy to commit barratry. Defendants' concerted conduct renders each and all of Defendants jointly and severally liable for Plaintiffs and the Class Members' damages and related statutory penalties.

## C.     COUNT THREE: VIOLATIONS OF THE DRIVER'S PRIVACY PROTECT ACT ("DPPA")

45.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth above.

46.     "Concerned that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons, Congress provided federal statutory protection." *Maracich v. Spears*, 570 U.S. 48, 51–52 (2013) (holding an attorney's solicitation of prospective clients falls outside the limit of the exemption from Driver's Privacy Protection Act ("DPPA") liability for obtaining driver information for use in connection with judicial and administrative proceedings, including investigation in anticipation of litigation). "It enacted the Driver's Privacy Protection Act of 1994, referred to here as the DPPA." *Id*. at 52 (citing 18 U.S.C. §§ 2721–2725). The DPPA "establishes a regulatory scheme that restricts the States' [and insurers'] ability to disclose a driver's personal information without the driver's consent." *Id*. at 57. The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." *Id*. "'Personal information' is information that identifies an individual, including a driver identification number, name, address, or telephone number." *Id*. (citing § 2725(3)).

47.     "Given the difference between an attorney's commercial solicitation of clients and his duties as an officer of the court, the proper reading of (b)(4) is that solicitation falls outside of the litigation exception." *Id*. at 62. "And when (b)(4) is interpreted not to give attorneys the privilege of using protected personal information to propose a commercial transaction, the statute

is limited by terms and categories that have meaning in the regular course of professional practice."

*Id.*

48.     K&P knew Plaintiffs' and other Class Members' phone numbers were obtained from Progressive, or its agent, an insurance company with access to Texas Department of Motor Vehicles' data.

49.     In violation of the DPPA, Progressive knowingly disclosed the personal information of drivers to K&P, which is not authorized to view Texas Department of Motor Vehicles' data. Pursuant to 18 U.S.C. § 2724(b), Plaintiffs' and Class members are entitled to actual damages, but not less than liquidated damages in the amount of $2,500, as a result of Defendants' violation of the DPPA.

**D.     COUNT FOUR: UNJUST ENRICHMENT**

50.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth above.

51.     As a direct and proximate result of Defendants' intentional and unlawful solicitation of Plaintiffs and Class Members, Defendants have been unjustly enriched by the improper receipt and retention of fees and other benefits they deprived Plaintiffs and, in equity, Defendants should not be allowed to retain their revenues and benefits.

52.     Plaintiffs are entitled to a judgment requiring Defendants to disgorge all sums they have received as revenue and other benefits arising from their unconscionable and unlawful solicitations.

**CONSUMER PROTECTION CLAIMS AGAINST ALL DEFENDANTS**

53.     For each of the Consumer Protection Claims below, Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

54.     Though Plaintiffs believe Defendants' alleged actions had an effect nationwide, the

claims below are based on Plaintiffs' domicile at the time of injury and Plaintiffs reserve the right to supplement, as necessary, the Consumer Protection Claims for any future Class members who are domiciled in a state unrepresented below.

**E.    COUNT FIVE: VIOLATION OF TEXAS'S DECEPTIVE TRADE PRACTICES ACT ("DTPA")**

55.    Lead Plaintiffs are consumers under the DTPA and residents of Texas.

56.    Defendants illegally solicited clients, exchanged motor vehicle crash victims' personal information without permission, and failed to initially disclose information concerning how K&P acquired Class Members' personal information. These acts constitute false, unfair, misleading, unconscionable, and/or deceptive acts under the DTPA. These facts were known to Defendants at all times and done with the intent to induce Plaintiffs and those similarly situated to employ Defendants in violation of barratry laws.

57.    Defendants' conduct related to their misrepresentations and failures as enumerated in this Complaint was unfair, misleading, and unconscionable under the DTPA.

58.    Defendants should not be allowed to rely on their terms of service to escape liability for their accused practices and profit from their own wrong.

59.    As a direct and proximate result of Defendants' intentional, unconscionable, misleading, unfair, and unlawful conduct, Plaintiffs and those similarly situated were damaged under the law.

60.    "[W]hile it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656 (2008). This same principle applies to the claims against Defendants. "Indeed, so well established is the defendant's liability in such circumstances that the Restatement (Second) of Torts sets forth as a general principle that one who intentionally causes injury to another is subject

to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." *Id.*, at 656–57 (internal citation omitted). Defendants' conduct is unjustifiable, and their misrepresentations related to the scheme are actionable without individualized reliance.

61.     Further, the Fifth Circuit has held "common issues can still predominate if common evidence of fraudulent misrepresentation gives rise to a reasonable inference that that misrepresentation induced the class members' actions and caused their losses." *Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 329 (5th Cir. 2020) (affirming District Court's finding that class-wide issues will predominate over individual issues through an inference of reliance) (internal citations omitted). "Other circuits have likewise permitted inferences of reliance when they follow logically from the nature of the scheme, and there is common, circumstantial evidence that class members relied on the fraud." *Id.*, at 329–30.

62.     K&P contacted Plaintiff and Class Members without their permission after being given their information by Progressive. K&P did not tell Mr. Cook who the entity was when it called him. It took Dr. Kelley-Cook also receiving another call and pushing the K&P representative to figure out how they got her information. Progressive should not be giving out people's personal information to help K&P commit barratry. Plaintiffs believe Progressive should provide a functional product as advertised rather than allowing people to be illegally solicited by K&P after they suffer a motor vehicle crash. These actions create inference of reliance against Defendants for perpetuating the fraud.

63.     Plaintiffs and those similarly situated have been damaged by Defendants' willful violation of the DTPA and are entitled to relief in the form of treble damages, attorneys' fees, and costs.

## RICO CLAIM

**F.**     <u>C<small>OUNT</small> S<small>IX</small>: V<small>IOLATION OF</small> RICO: 18 U.S.C. § 1962(C)</u>

64.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth above.

65.     Defendants jointly operated their criminal enterprise and are engaged in interstate commerce and whose activities affect interstate commerce.

66.     Before and during the Class Period, Defendants participated in an ongoing fraudulent enterprise to engage in barratry.

67.     This was a simple but long-lasting scheme. Progressive would receive reports from its clients, such as Plaintiffs, that they had been in a motor vehicle crash. Progressive would then give the crash victim's information to K&P, who would then illegally solicit the victim. Defendants' pattern of racketeering activity damaged Plaintiffs and those similarly situated.

68.     Defendants each employed such criminal conduct as their regular way of doing business.

69.     On information and belief, Progressive was paid by K&P for each crash victim it sends to K&P for solicitation under a long running agreement.

70.     As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and those similarly situated have been injured in an amount of at least $5,000,000.

## <u>VICARIOUS LIABILITY</u>

71.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth here.

72.     At all times relevant hereto, Defendants are vicariously liable for the actions of their managers, agents, officers, and employees.

73.     Defendants other than K&P are liable for the actions of K&P, because its veil

should be pierced, and its separateness disregarded. Defendants have used K&P to evade existing legal obligations such as advertising rules for lawyers and law firms, to circumvent the barratry statutes, to hide crimes, and justify wrongs. Moreover, any purported defenses related to K&P operating as a separate and legitimate legal services contract company should be void.

## IX. DAMAGES

74. Plaintiffs hereby adopt by reference each and every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

75. Defendants' conduct and actions discussed above proximately caused injury to Plaintiffs, which resulted in:

    a. Statutory damages for barratry;

    b. Actual damages and treble damages under the Consumer Protection Claims;

    c. Exemplary damages under the Consumer Protection Claims and Common-law Fraud;

    d. Actual damages, including economic damages under all causes of action;

    e. Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' actions.

    f. Civil penalties;

    g. Prejudgment interest;

    h. Attorney's fees; and

    i. Costs of action.

76. Plaintiffs also seek unliquidated damages within the jurisdictional limits of this Court.

## X. PERMANENT INJUNCTION

77. Plaintiffs pray that the Court permanently enjoin Defendants from continuing their barratry scheme. In particular, Plaintiffs request that Defendants be permanently enjoined from (1)

paying salespeople or representatives to solicit prospective clients to sign a contract for legal services with intent to obtain an economic benefit, (2) accepting employment that resulted from the solicitation of prospective clients, (3) paying, giving, or offering to pay or give anything of value to people not licensed to practice law for soliciting prospective clients for, or referring clients or prospective clients to K&P or any other law firm or lawyer, (4) soliciting prospective clients in connection with motor vehicle crashes, which was and is inherently overreaching, harassing, and unduly influential, and/or (5) entering into agreements for, charging for, or collecting a fee for professional employment obtained as a result of the wrongful solicitation of prospective clients for a lawyer or law firm.

## XI.    PUNITIVE DAMAGES

78.    Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth here.

79.    The wrong done to Plaintiffs by Defendants was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs seek punitive damages in an amount to be proven at trial.

## XII.    ATTORNEY'S FEES

80.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

81.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorney's fees be awarded under Texas Government Code §82.0651.

## XIII.    INCORPORATION OF PARAGRAPHS

82.    Every paragraph in this Complaint is hereby incorporated into every other paragraph.

# XIV.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, awarding relief as follows:

a.    Finding a class action is the most efficient and effective way to resolve the claims against Defendants;

b.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

c.    Holding that the doctrine of unjust enrichment applies and ordering Defendants to pay Plaintiffs all sums received by Defendants flowing from their illegal and unconscionable activities;

d.    For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be determined, as allowable by law;

e.    For an award of punitive damages, as allowable by law;

f.    For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

g.    Pre-and post-judgment interest on any amounts awarded; and

h.    Any other relief that this court may deem just and proper.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**EKSM, LLP**
Jarrett L. Ellzey
Texas Bar No. 24040864
jellzey@eksm.com
Tom Kherkher
Texas Bar No. 24113389
tkherkher@eksm.com
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
Alexander G. Kykta
Texas Bar No. 24107841
akykta@eksm.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFFS,
AND THOSE SIMILARLY SITUATED**