**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | Civil Action No. 4:24-cv-4423 |
| vs. | §<br>§ | JURY TRIAL DEMANDED |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., a Florida Profit Corporation, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants.* | §<br>§ | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT PROGRESSIVE
CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

TO THE HONORABLE KEITH ELLISON:

## I.      INTRODUCTION

In its Motion to Dismiss Plaintiffs' Amended Class Action Complaint, Defendant

Progressive Casualty Insurance Company has provided this Court with neither a factual nor a legal

basis for dismissing Plaintiffs' Amended Class Action Complaint.[1] Defendant's basis of dismissal

requires alternately ignoring or decontextualizing the facts Plaintiffs present, followed by

improperly applying legal standards, and fails to provide a legitimate basis for dismissal.

Accordingly, its Motion to Dismiss must be denied. Alternatively, if this Court determines that

Plaintiffs' Complaint falls short of the governing standard, Plaintiffs request an opportunity to file

an amended complaint setting forth additional facts in support of their claims.

---

[1]      With the exception of Plaintiffs' claims for unjust enrichment, for which Plaintiffs concede dismissal.

## II.    LEGAL STANDARD

In reviewing a complaint on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must consider all facts alleged in the complaint as true and construe the pleadings in a light most favorable to the plaintiff. *Paselk v. Texas*, No. 4:12cv754, 2013 U.S. Dist. LEXIS 127420, at *14 (E.D. Tex. June 6, 2013) (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994)). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) requires more than labels and conclusions or "a formulaic recitation of the elements of a cause of action," it does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Twombly* and *Iqbal* did not abrogate the notice standard pleading of Rule 8(a)(2) but confirmed that Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A claim should not be dismissed so long as there are "enough facts to state a claim to relief that is plausible on its face." *Bunch v. Mollabashy*, No. 3:13-CV-1075-G (BH), 2015 U.S. Dist. LEXIS 38717, at *13 (N.D. Tex. Mar. 26, 2015) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Paselk*, 2013 U.S. Dist. LEXIS 127420 at *14.

## III.    ARGUMENT

The crux of Progressive's argument for dismissal is that Progressive has not committed any illegal act outlined in the Complaint because it cannot be held liable for co-Defendant The

Law Offices of Kanner & Pintaluga P.A.'s (K&P's) illegal acts. This argument requires an inappropriate parsing of the claims and allegations in Plaintiffs' Complaint. The Complaint must be viewed as a whole, and when taken in context, Plaintiffs provide the basis for Progressive's liability in this case. Indeed, Progressive's actions are the very basis of the claim because without Progressive's illegal access of motor vehicle records, K&P could not have illegally solicited car accident victims. Plaintiffs' claims satisfy the governing pleading standards and dismissal pursuant to Rule 12(b)(6) is inappropriate.

**A.      Plaintiffs' complaint sufficiently pleads barratry and civil conspiracy claims.**

In the premier example of begging the question, Progressive first askes how it can be liable for civil conspiracy if it is not liable for barratry? And then, how can it be liable for barratry if it not liable for civil conspiracy? Why, it must not be liable for anything![2] This circular reasoning only works when Plaintiffs' barratry and civil conspiracy claims are considered wholly separately, which is not the proper method for evaluating Plaintiffs' Complaint.

"When used as a theory of vicarious liability, civil conspiracy is part of the factual situation that permits a remedy against co-conspirators" because "[w]ithout it, there would be no grounds for recovery against co-conspirators who did not commit the underlying unlawful act." *Agar Corp., Inc. v. Electro Circuits Intl., LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Thus, "it is not inconsistent to say civil conspiracy is a vicarious liability theory while also recognizing that it is a kind of cause of action." *Id*. Texas courts have "characterize[d] vicarious liability itself as a cause of action when sorting through plaintiffs' various claims" while noting that "characterizing civil conspiracy as a cause of action does not mean it is an independent tort." *Id*. (citing *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 105 n.2 (Tex. 2018); *N.P. v. Methodist Hosp.*, 190 S.W.3d 217, 225

---

[2]      Progressive uses this same tactic in disputing Plaintiffs' DTPA claims, which are addressed in Section C, *infra*.

(Tex. App.--Hous. [1st Dist.] 2006); *Crooks v. Moses*, 138 S.W.3d 629, 637 (Tex. App.--Dallas 2004)). Accordingly, Progressive's liability for barratry is part and parcel of its liability for civil conspiracy and vice versa; the two must be considered together.

Plaintiffs have properly alleged barratry claims against K&P; even K&P did not move to dismiss those claims. *See* K&P's Mot. to Dismiss, ECF No. 31. The concern for Progressive is whether Plaintiffs have properly brought civil conspiracy claims against Progressive that would hold Progressive liable for K&P's barratry because "a proven civil conspiracy means 'each of [the] defendants in error is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.'" *Agar Corp.*, 580 S.W.3d at 140 (quoting *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937)).

To properly plead civil conspiracy under Texas law, Plaintiffs must demonstrate the following: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp.*, 580 S.W.3d at 141 (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Plaintiffs' Complaint pleads these elements. Progressive and K&P (two or more persons) conspired (meeting of the minds) to exchange the illegally obtained personal information (unlawful, overt act #1) of victims of car accidents involving individuals insured by Progressive for the purpose of illegally soliciting clients and filing frivolous lawsuits (object or course of action and unlawful, overt act #2), and the individuals whose information was obtained suffered a violation of their privacy as a result (damages). Compl. ¶ 1–26. As shown in the specifics of this case, when an insurance claim for a minor car accident was filed with Progressive, Progressive used the information in the claim to obtain the personal information of the individuals involved in the accident. *Id*. at ¶ 22. And then Progressive sold or otherwise provided this

information to K&P, knowing full well that K&P would use the information to solicit the accident victims as clients by promising large settlements in exchange for agreeing to retain K&P. *Id*. at ¶ 19–21. The accident victims suffered damages as a result. *Id*. at ¶ 28–29.

Because Plaintiffs have properly pled the underlying tort of barratry and have likewise properly pled a civil conspiracy to commit barratry, Plaintiffs have properly brought both barratry and civil conspiracy claims against Progressive. Accordingly, Progressive's Motion to Dismiss must be denied.

**B.      Plaintiffs' complaint sufficiently pleads DPPA violations.**

Progressive's argument against Plaintiffs' DPPA claim is an exercise in semantics. Plaintiffs assert that Progressive provided personal information to K&P and "the only means by which Progressive could have obtained that information was through an unauthorized search of Texas motor vehicle records." Compl. ¶ 56. Through an impressive exercise in decontextualization, Progressive claims Plaintiffs only alleged that Progressive *could have* accessed the information from a state motor vehicle record without ever actually claiming that it did. Plaintiffs allege that Progressive accessed Texas motor vehicle records to illegally obtain personal information because there is no other possible alternative. That this claim is somewhat "speculative" is understandable and permissible, and is, in fact, the pleading standard for a proper complaint. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged.") (emphasis added).

The pleadings draw a reasonable inference that Progressive unlawfully obtained Plaintiffs' personal information from motor vehicle records by claiming there is no alternative method by which the information could have been obtained. Progressive's request for dismissal of this claim

should be denied.

**C.      Plaintiffs' Complaint sufficiently pleads violations of the DTPA.**

Again employing its question-begging strategy, Progressive argues Plaintiff does not have standing to bring a DTPA claim against Progressive because Plaintiffs are not "consumers" under the DTPA because they did not buy anything from Progressive, and they are not "purchasers" under the Telephone Solicitation Act[3] because Progressive did not make the solicitation calls leading to this lawsuit. This argument ignores Plaintiffs' claims of civil conspiracy.

Plaintiffs readily admit they did not seek to purchase anything from Progressive, nor did a representative from Progressive make the soliciting phone call they received. As Progressive points out, this is laid out in the Complaint. Plaintiffs allege that Progressive and K&P entered into a scheme in which they agreed to violate the DTPA by exchanging illegally obtained personal information in order to commit solicitation. A violation of the Telephone Solicitation Act is statutorily defined as a "false, misleading, or deceptive act or practice" under the DTPA. Accordingly, Plaintiffs have alleged that Progressive is a participant in K&P's violation of the DTPA by conspiring to engage in the scheme that ultimately violated the law. Progressive and K&P's arrangement to violate the law renders Progressive vicariously liable for K&P's violation of the DTPA.

Plaintiffs' Complaint properly alleges that Progressive conspired with K&P to violate the DTPA and those claims should not be dismissed.

**D.      Plaintiffs' Complaint sufficiently pleads a RICO claim.**

Progressive next attacks Plaintiffs' RICO claim, arguing Plaintiffs alleged neither a pattern

---

[3]      Texas Business & Commercial Code § 302.303 authorizes a private right of action under the DTPA § 17.50 for "purchasers" (defined as "a person who is solicited to become . . . obligated for the purchase . . . of an item") who have received solicitation in violation of the Telephone Solicitation Act.

*Plaintiffs' Response in Opposition*
*to Progressive's Motion to Dismiss*                                                    Page 6 of 12

of racketeering activity nor a cognizable injury. Plaintiffs' Complaint makes clear that Progressive and K&P engaged in a racketeering enterprise that violated the privacy rights of individuals involved in automobile accidents reported to Progressive by exchanging unlawfully acquired personal information and engaging in fraudulent telephone solicitation pursuant to that exchange.

### 1. *Plaintiffs' Complaint sufficiently pleads continued racketeering activity.*

Plaintiffs' Complaint details the Defendants' racketeering activity. Progressive, as a car insurer, received reports of accidents that included vehicle identification information. Compl. ¶ 20–22. Progressive used this information to illegally access motor vehicle records to obtain the personal information of the vehicles' owners, which it then sold to K&P. *Id*. K&P used this information to commit the crime of barratry by illegally calling owners of vehicles and promising settlements for retaining K&P. *Id*. at ¶ 19–24. As alleged in the Complaint, the K&P representative that called Dr. Kelley-Cook did not identify the law firm for which he worked until pressed to do so and made false promises regarding large settlements in exchange for the filing of potentially frivolous lawsuits. Compl. ¶ 29–21. By exchanging this illegally obtained information in order to fraudulently solicit clients and settlements, K&P and Progressive formed an enterprise to engage in a pattern of the racketeering activity of wire fraud. K&P's use of telephone solicitation is wire fraud, and Progressive's exchange of unlawfully obtained personal information facilitated the wire fraud.

Progressive argues that Plaintiffs' allegation that Progressive sold personal information to K&P is too speculative to support a finding of fraud as a predicate act, but Plaintiffs' Complaint provides the factual underpinning Progressive claims it lacks. A representative from K&P explicitly told Plaintiffs he received their personal information pursuant to an agreement with Progressive. Compl. ¶ 20. Plaintiffs further pled that another individual received a solicitation call

from K&P after his involvement in a car accident with a Progressive-insured driver. Compl. ¶ 19, n.1. This additional evidence elevates Plaintiffs' claims from speculative to plausible.

Finally, Plaintiffs provided a basis for the scheme's "continued criminal activity." Plaintiffs allege the scheme has been "operating for years" and "likely resulted in hundreds if not thousands of illegal solicitation calls across Texas." Compl. ¶ 23. Plaintiffs even provided evidence that other accident victims involved parties insured by Progressive received calls from K&P. *See* Compl. ¶ 19, n.1. These allegations create a plausible inference that Progressive and K&P have an ongoing scheme in which they use telephone calls to defraud and exploit car accident victims. Plaintiffs' RICO claims are adequately pled and should not be dismissed.

### 2. *Plaintiffs' Complaint sufficiently pleads cognizable damages under RICO.*

Paragraph 80 of Plaintiffs' Complaint affirmatively pleads that Plaintiffs have been injured in the amount of at least $5,000 as a result of Defendants' racketeering activities. Progressive claims this allegation is unsupportable, and Plaintiffs therefore lack standing to bring their RICO claim. Plaintiffs admit that the allegations in the Complaint fail to tie a neat bow around the basis of their damages, but nevertheless the Complaint presents a plausible inference that Defendants' scheme caused injury to Plaintiffs' business or person.

Mr. Cook is a personal injury attorney whose practice is built around handling insurance claims and vehicle accident cases. Compl. ¶ 19. K&P's illegal solicitation of clients, and Progressive's illegal sale of personal information to facilitate that illegal solicitation, resulted in a loss of Mr. Cook's business interest by at least $5,000 through stealing Mr. Cook's potential clients via wire fraud. This loss of business interest is recognized in this Circuit as supportable RICO damages. "[L]oss of a legal entitlement is sufficient but not invariably necessary to sustain a RICO claim." *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 410 (5th Cir. 2015).

"A plaintiff need not show that the other party *would have been obliged* to confer a benefit, only that the other party *would have conferred* the benefit." *Id*. Moreover, at this early stage of litigation, Plaintiff need not provide an exact number of damages, nor even present an individual who but-for Defendants' interference would have hired Mr. Cook. "At the pleading stage, *general factual allegations* of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Warnock v. State Farm Mut. Auto. Ins. Co.*, No. CIVA 5:08CV01DCBJMR, 2008 WL 4594129, at *4 (S.D. Miss. Oct. 14, 2008) (quoting *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir.1998)).

Plaintiffs have met the standard for maintaining a RICO claim and Progressive's Motion to Dismiss should be denied.

### E.     Plaintiffs' complaint sufficiently pleads vicarious liability.

Plaintiffs' Complaint demonstrates that Progressive should be held liable for K&P's unlawful actions even assuming, *arguendo*, Progressive and K&P's scheme does not rise to the level of conspiracy. Plaintiffs allege that even if Progressive did not conspire to commit barratry or violate the DTPA, K&P used Progressive as a willing vehicle to circumvent statutory law, hide their crimes, and provide a plausible cover for any rightfully brought claims against K&P. Compl. ¶ 83.

The Complaint lays out the basis of Defendants' relationship: K&P and Progressive maintained some sort of agreement to exchange unlawfully obtained personal information of victims of car accidents involving parties insured by Progressive. Compl. ¶ 20, 25. Progressive provided this unlawfully obtained information within the scope of that arrangement, and within the scope of its role as insurer of vehicle owners. Without access to car accident reports given to

*Plaintiffs' Response in Opposition*
*to Progressive's Motion to Dismiss*                                                                    Page 9 of 12

Progressive within the scope of its role as an insurance provider, Progressive would not have access to personal information to provide to K&P. *Id.* at ¶ 21–22. And finally, K&P and Progressive's arrangement damaged Plaintiffs through invasion of privacy, mental anguish, harassment, and loss of business interest. *Id.* at ¶ 29, 80.

K&P and Progressive maintained a relationship rising to the level of an agency formed to commit the crime of barratry and violate the DTPA. Thus, each Defendant should be held jointly and severally liable for the actions of the other Defendant.

**F.      Plaintiffs' Complaint sufficiently pleads a claim for injunctive relief.**

Plaintiffs asserted the request for permanent injunction on behalf of the class they intend to represent. Plaintiffs' Complaint makes it clear that K&P and Progressive's scheme to defraud accident victims through the use of harassing, exploiting, and unduly influential promises of large settlements is large-scale and ongoing scheme. Compl. ¶ 23. Without a permanent injunction, Defendants will continue in their illegal harassment campaign against accident victims who have their personal information stolen by Progressive and sold to K&P. Accordingly, failure to grant the injunction will result in irreparable injury to accident victims, the protection of these victims' personal information vastly outweighs damages Progressive may sustain by being disallowed from continuing in their already illegal activity, and this injunction will serve the public interest by disallowing further harassment and exploitation of accident victims. All the elements of granting a permanent injunction are met.

**G.      In the alternative, Plaintiffs should be given leave to amend.**

Plaintiffs' Complaint stands on its own merit: it presents a well-supported, cogent and logical sequence of facts demonstrating a plausible inference that Progressive is liable for the claims presented. Should the Court disagree, however, Plaintiffs respectfully request leave to

amend to address any deficiencies. "If it appears that given an opportunity to amend the pleading, the plaintiff would be able to state a claim upon which relief could be granted, the court should grant leave to amend." *In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d at 830 (citing *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 U.S. Dist. LEXIS 16624 (N.D. Tex. Mar. 7, 2007)).

Respectfully submitted,

*/s/ Leigh S. Montgomery*
**EKSM, LLP**
Jarrett L. Ellzey
Texas Bar No. 24040864
jellzey@eksm.com
Tom Kherkher
Texas Bar No. 24113389
tkherkher@eksm.com
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
4200 Montrose, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFFS,
AND THOSE SIMILARLY SITUATED**

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

 */s/Leigh S. Montgomery*
Leigh S. Montgomery