**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 4:24-cv-4423 |
| vs. | § § | JURY TRIAL DEMANDED |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., a Florida Profit Corporation, | § § § § § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kelly Cook and Esther Kelley-Cook allege claims against Defendants Progressive Casualty Insurance Company ("Progressive") and The Law Offices of Kanner & Pintaluga, P.A. (INC) ("K&P") in this Second Amended Class Action Complaint. Plaintiffs allege claims for barratry and conspiracy. Plaintiffs' claims are based on personal knowledge with respect to their own acts, and upon information and belief based on facts obtained through investigation conducted by their counsel.

### I. NATURE OF ACTION

1.      This case exposes an audacious and far-reaching conspiracy that has corrupted the legal and insurance landscape in Texas and beyond. Plaintiffs Kelly Cook and Dr. Esther Kelley-Cook bring this class action on behalf of thousands of unsuspecting vehicle owners and accident victims across the state of Texas who were illegally solicited for legal services by The Law Offices of Kanner & Pintaluga, P.A. ("K&P"), using confidential crash data improperly funneled from an actor, or actors, within Progressive Casualty Insurance Company ("Progressive"). This

scheme violates Texas's civil barratry statute, Texas Government Code § 82.0651, which prohibits lawyers and their agents from directly soliciting legal clients, and mandates $10,000 in statutory damages per victim—regardless of whether the victim retained the firm or suffered additional harm.

2.      The barratry network is no accident—it is engineered. As existing evidence shows, K&P obtained signed case packets from a solicitation ring composed of third-parties (case runners) K&P pays to recruit clients.  These third parties operate by obtaining crash victim information—often directly from Progressive claims systems—and impersonating law firms to pressure victims into signing blank retainer packets. These packets are then sent to firms like K&P, which either tacitly endorse the misconduct or deliberately look away. Regardless of the authority K&P expressly grants these third parties, K&P willingly accepts the financial benefits of the illegal conduct.

3.      This lawsuit seeks to hold Defendants accountable for this rampant barratry, and to end a pipeline that has commodified accident victims. Plaintiffs bring this action on behalf of a defined class of individuals whose private information—obtained following a crash involving a Progressive-insured driver—was used to unlawfully solicit legal representation between November 11, 2020, and the date of filing. The class is ascertainable through Progressive's claim records, third party lead generators' records, and K&P's intake logs and financial records.  The class-wide damages are mechanical: each illegal contact constitutes a statutory violation worth $10,000 under § 82.0651, with further disgorgement of any fees paid by solicited clients under voided contracts.  Plaintiffs also seek reasonable attorneys' fees and costs as authorized by the barratry statute.

4.      Progressive's role—whether through knowing cooperation or willful blindness—was indispensable. Claims data, including contact information and crash details, were extracted and distributed without victims' consent, repeatedly and systematically. Adjusters acting under little oversight, or in collaboration with outside brokers, monetized this information in direct violation of Texas law and consumer privacy norms. What began as a breach of trust has metastasized into a multistate enterprise. This class action seeks to dismantle it, to compensate those exploited, and to ensure that neither Progressive, K&P, nor their confederates profit from this business model.

5.      Plaintiffs were victims of a barratry scheme between K&P, Progressive, and likely one or more third parties who obtained crash victim information from Progressive and solicited Plaintiffs and the proposed class members on behalf of K&P. This suit is brought on behalf of a class of individuals who (1) were involved in a motor vehicle collision or owned a vehicle involved in one, (2) the at-fault driver had Progressive as the insurer of the vehicle involved, and (3) after the Progressive insured reported the crash to Progressive, were contacted by K&P between November 11, 2020, and the filing date of this action (the "Class"). Plaintiffs seek damages on behalf of themselves and future Class Members, asserting claims under common law against both Progressive and K&P.

## II.      SUBJECT MATTER JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this action under 28 U.S.C. § 1332. This controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 Class Members in each Class, members of the Classes are citizens of a State

different from Defendants, Class Members may be a citizen or subject of a foreign state, and Defendants are citizens of a state. 28 U.S.C.A. § 1332(d)(2)(A-B). The Classes alleged are likely to have greater than $5,000,000 in damages, as pleaded below, and include Members who are foreign state citizens. The Court has subject matter jurisdiction over the state law claims under 28 U.S.C.A. § 1367.

7.       The Court has personal jurisdiction over each of Defendants because each either conducts business in and maintains operations in this District, is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Further, there is an affiliation between the contacts directed at Texas and the controversy (i.e., that by giving out Texas driver's info, or soliciting Texas plaintiffs, the out-of-state's activities in Texas are directly related to the issues they are being sued for).

8.       Venue in this Court is proper under 28 U.S.C. § 1391(b). The claims asserted here arose in this District; a substantial part of the activities, conduct, or damages giving rise to the claims occurred in this District; Defendants have substantial contacts with this District; and Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

### III.    MISNOMER / ALTER EGO

9.       In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named here. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.    PRINCIPAL-AGENT LIABILITY

10.    All allegations here of acts or omissions by Defendants include, but are not limited to, acts and omissions of such Defendants' officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiffs allege that such acts and omissions were committed or made with express and/or implied authority of Defendants or were ratified or otherwise approved by the same Defendants; or otherwise, that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment, as the case may be.

11.    Any actor within K&P's employment or otherwise engaged by K&P that committed the acts alleged herein was acting within the scope of his or her employment or agency relationship with K&P. Even if those actions were not expressly authorized by K&P, K&P's acceptance of the acts alleged herein without question or investigation, and its ultimate benefit from those actions, ratified the agent's or employee's actions as if those actions were authorized in the first place.

12.    Any actor within Progressive's employment or otherwise engaged by Progressive that committed the acts alleged herein was acting within the scope of his or her employment or agency relationship with Progressive. Whether or not those actions were authorized by Progressive, Progressive's acceptance of the acts alleged herein without question or investigation, and its ultimate benefit from those actions, ratified the agent's or employee's actions as if those actions were authorized in the first place.  Progressive, as a corporate entity received a benefit from the final resolution of the claims at issue for a sum certain.  Thus, Progressive, as a corporate entity, benefitted from its agent's or employees' unlawful acts even if those acts were not expressly authorized.

## V.     VICARIOUS LIABILITY

13.     Defendants other than K&P are liable for the actions of K&P, because its veil should be pierced, and its separateness disregarded. Defendants have used K&P to evade existing legal obligations such as advertising rules for lawyers and law firms, to circumvent the barratry statutes, to hide crimes, and justify wrongs. Moreover, any purported defenses related to K&P operating as a separate and legitimate legal services contract company should be void.

14.     K&P is liable for the actions of any third-party case runner that solicited on its behalf. By failing or refusing to investigate the source of the "leads" provided by the case runner, endorsing the actions of the case runner by engaging clients obtained through illegal solicitation, and by benefitting through the case runner's actions in litigating and settling claims obtained through illegal solicitation, K&P ratified the actions of the case runner such that K&P is vicariously liable for any and all action taken by the case runner, whether those actions were specifically authorized or not.

15.     Progressive is liable for the actions of any adjuster employed by Progressive that illegally sold accident victim information to K&P, whether directly or through a third-party case runner. Progressive authorizes its adjusters to settle claims under a certain amount with no oversight and incentives the quick and efficient settling of claims. Accordingly, any Progressive adjuster that sold accident victim information to K&P, or a K&P authorized individual or entity, was operating within the scope of their employment with Progressive.

16.     Alternatively, by failing to adequately investigate or provide proper oversight to the dissemination of personal information of its insureds, Progressive is liable for the actions of any adjuster acting outside the scope of his or her employment.

## VI.    PARTIES

**A.    CO-LEAD CLASS PLAINTIFFS**

17.    Plaintiff Kelly Cook is an individual residing in Harris County, Texas. He was contacted by K&P after his vehicle was involved in a motor vehicle crash and that crash was reported solely to Progressive. He may be contacted through his counsel, the undersigned law firm.

18.    Plaintiff Esther Kelley-Cook is an individual residing in Harris County, Texas. She was contacted by K&P after her vehicle was involved in a motor vehicle crash and that crash was reported solely to Progressive. She may be contacted through her counsel, the undersigned law firm.

**B.    DEFENDANTS**

19.    Defendant Progressive Casualty Insurance Company is an Ohio insurance company located in Cleveland, Ohio.

20.    Defendant The Law Offices of Kanner & Pintaluga, P.A. (INC) is a Florida-based law firm doing business in Houston, Texas. K&P is headquartered at 925 South Federal Highway 6th Floor Boca Raton, FL 33432-33432.

21.    The unethical, illegal, and fraudulent efforts by the Progressive and K&P representatives resulted in K&P obtaining clients that the firm could not otherwise nor ethically obtain, resulting in K&P collecting substantial sums of money from settlements of many cases originating from the conduct using nonlawyer case-runners in the form of Progressive. K&P uses money so derived together with a pattern of activity through the U.S. Mail and interstate wire or radio communications to establish, operate, conduct, and participate in the same ongoing illegal and unethical activities. K&P illegally and unethically offers incentives to clients and uses such incentives as improper leverage to control clients.

## VII.    FACTUAL ALLEGATIONS

22.    On or around October 3, 2024, the vehicle owned by Kelly Cook and Esther Kelley-Cook was involved in a motor vehicle crash, resulting in some property damage (the "Incident"). The at-fault driver, insured by Progressive, reported the crash to Progressive. What followed was illegal, fraudulent, and in direct violation of the ethical rules governing Texas attorneys.

23.    Just two days later, on October 5, 2024, Dr. Kelley-Cook received a phone call inquiring about the crash. Unsure of the caller's intent, she handed the call to her husband, Mr. Cook, a personal injury attorney with experience dealing with insurance matters. To his surprise, the caller was not from Progressive but was instead from a party soliciting him to file injury claims. The caller assured Mr. Cook that he would receive a minimum of $10,000 for retaining their firm and suggested that any additional passengers in the vehicle could also file claims. The caller represented she was calling from K&P.[1]

24.    On October 22, 2024, K&P contacted Dr. Kelley-Cook again, offering unsolicited legal representation for the October 3rd crash. This time, the caller identified himself as a representative of K&P and explicitly stated that Progressive had provided Plaintiffs' phone numbers under an agreement between Progressive and K&P.

25.    Neither Mr. Cook nor Dr. Kelley-Cook had provided their phone numbers or any contact information to Progressive. In fact, neither was present at the time of the crash – their parents were using their vehicle at the time of the crash. The parties involved opted not to call the police or file an official accident report, and the at-fault driver reported the accident directly to

---

[1] Further investigation by Plaintiff confirmed the calling party represented to other callers the phone number belonged to K&P and the representative handling the calls worked for on on behalf of K&P.  The investigation also uncovered that other individuals, including another Houston lawyer, received nearly identical solicitations that involved Progressive.

Progressive. The at-fault driver did not have Plaintiffs' phone numbers, meaning he must have identified the vehicle by its license plate and registration, listing Mr. Cook and Dr. Kelley-Cook as the owners.

26.    Despite this, K&P obtained Mr. Cook and Dr. Kelley-Cook's personal contact information from Progressive, or a confederate operating within Progressive, and used it for solicitation. The only way Progressive could have acquired this information was by accessing Texas motor vehicle records, which list both as registered owners of the vehicle. On information and belief, someone at Progressive used these records to retrieve Plaintiffs' contact information and provided it to K&P as part of an ongoing barratry scheme.

27.    Plaintiffs believe this scheme has been operating for years, with Progressive—or someone within the company—regularly accessing crash information provided by its insured, and/or accessing motor vehicle records, and supplying that information to K&P. This likely resulted in hundreds if not thousands of illegal solicitation calls across Texas.

28.    On information and belief, the following is an outline of the conspiracy network at play between K&P and Progressive:

- On information and belief, K&P purchases case "leads" from unregistered, unregulated third parties, which are generally referred to as "case runners." Case runners operate outside the legal and ethical considerations that bind lawyers and law firms and accordingly, are frequently used to circumvent barratry and advertising laws.

- Case runners can be individuals or organizations, but regardless operate essentially identically: case runners collect information about accidents and accident victims and use that information to sign up clients for law firms. The classic example is the nefarious ambulance chaser who slinks around emergency rooms, but modern technology now offers case runners easier and less detectable means of accessing victims.

- A significant source of accident information for case runners is insurance companies. On information and belief, the case runner who sold Plaintiffs'

information to K&P has an ongoing relationship with one or more insurance adjusters or other employees employed by Progressive.

- Insurance adjusters are given authority to resolve claims under a certain amount with little to no managerial or corporate oversight. On information and belief, Progressive adjusters specifically are incentivized by Progressive to resolve small claims quickly and efficiently through bonuses and corporate structure.

- Accordingly, a Progressive adjuster is incentivized to sell off claims under the amount that he or she is authorized to settle to clear his or her claims docket as quickly as possible and reap the corporate rewards Progressive offers for efficiently settling claims.

- On information and belief, one or more Progressive adjusters sold Plaintiffs' information to a case runner, hoping that Plaintiffs would accept a low-dollar insurance settlement with minimal effort. This benefits not only the adjuster, but Progressive as a whole by closing small claims with minimal labor, clearing the way for more lucrative and time-consuming claims.

- The case runner then either sold Plaintiffs' information directly to K&P or called Plaintiffs itself, posing as K&P to feign legitimacy. Either way, the information ultimately lands with K&P, who runs the case after purchasing the information from the case runner.

- K&P accepts these cases either a) fully knowledgeable about the illegal solicitation that obtained them, or b) without investigating the source, but fully endorsing and ratifying the case runner's actions in illegally obtaining accident victim information and either illegally soliciting the victims on K&P's behalf or sending the information to K&P so it can illegally solicit victims itself.

29.    As a result of these unlawful solicitations, K&P has profited by illegally securing client contracts and fraudulent settlements. Progressive, or individuals within Progressive, have likewise profited by selling vehicle owner contact information to K&P in violation of the law.

30.    While Plaintiffs do not yet know the exact details of the agreement between Progressive and K&P, or the actors and agents acting on Progressive and K&P's behalf, the representative who contacted Dr. Kelley-Cook stated that K&P obtained her number through an arrangement with Progressive. This representative further disclosed that Progressive routinely

provides accident victim contact information to K&P, which then uses it for solicitation.

31.    Thus, Progressive and K&P operate under a systematic arrangement: Progressive illegally accesses and discloses private driver information to K&P, who in turn pays Progressive for the information and uses it to unlawfully solicit clients.

32.    On information and belief, this exchange of information was facilitated by a third-party case runner as described above. This third-party was operating on behalf of and within either an employment or agency relationship with K&P such that its actions can be attributed to K&P.

33.    Each Defendant has systematically violated at least one of the following statutes and rules:

    a.    Texas Penal Code §38.12(a)(2) (solicited employment in person for himself or another);

    b.    Texas Penal Code §38.12(a)(4) (paid or provided value to others to solicit employment);

    c.    Texas Penal Code §38.12(b)(1) (knowingly financed solicitations);

    d.    Texas Penal Code §38.12(b)(3) (knowingly accepted employment that resulted from the wrongful solicitation of prospective clients);

    e.    Texas Penal Code §38.12(d)(1)(2)(E) (provided or knowingly permitted solicitations of prospective clients that involved coercion, duress, overreaching, harassment, intimidation, or undue influence);

    f.    Texas Penal Code §38.12(d)(1)(2)(F) (provided or knowingly permitted solicitations of prospective clients that contained a false, fraudulent, misleading, deceptive, or unfair statement or claim);

    g.    Disciplinary Rule 7.03(a) (solicited prospective clients);

    h.    Disciplinary Rule 7.03(b) (paid, gave, or offered to pay or give, something of value to non- lawyers for soliciting prospective clients for a lawyer or law firm);

    i.    Disciplinary Rule 7.03(c) (paid, gave, advanced, or offered to pay, give, or advance, something of value to another person for soliciting prospective clients for a lawyer or law firm); and

    j.    Disciplinary Rule 7.03(d) (entered into an agreement for, charged for, or

collected a fee for professional employment obtained as a result of wrongful solicitation).

34.    On information and belief, Defendants conspired to, and committed, barratry. Due to these unconscionable practices, Defendants must pay $10,000 in statutory penalties to each Plaintiff and each person similarly situated, regardless of whether any of these individuals ultimately retained K&P. But for each person similarly situated who actually retained K&P, Defendants must also disgorge any revenue, profits, or any other gains from their fraudulent scheme to those similarly situated people. Defendants are therefore civilly liable for damages and penalties under Texas Government Code § 82.0651.

35.    Plaintiffs and others solicited through Defendants' barratry scheme also suffered damages in that they had their privacy invaded and their personal identifying information disclosed to third parties for a fraudulent purpose.

36.    Defendants knew or should have known they were engaging in illegal activities through their barratry. Defendants acted with reckless disregard when they exchanged motor vehicle crash victim's personal information to solicit employment for legal claims. As such, Defendants are responsible for Plaintiffs' damages, as well as the damages suffered by those similarly situated.

## VIII.   CLASS ACTION ALLEGATIONS

37.    Plaintiffs bring this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> **All Texas citizens or entities who's vehicle was involved in, a motor vehicle crash and were, thereafter, contacted by K&P from November 11, 2020, through the original filing date of this suit, November 11, 2024, inclusive (the "Unsolicited Calls Class").**

38.    Excluded from the class definition are any employees, officers, directors of Defendants, and attorneys appearing in this case, and any judge assigned to hear this action.

Plaintiffs reserve the right to modify the class definition as they obtain relevant information.

39.     The proposed class can be identified through Defendants' records and publicly filed lawsuits by K&P, among other information.

40.     On information and belief, there are thousands of potential Class Members in the United States. Accordingly, the number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

41.     Lead Plaintiffs are members of the proposed classes.

**<u>Commonality</u>**

42.     Commonality. *Fed. R. Civ. P. 23(a)(2)*. There are questions of fact common to the Putative Class, and those questions predominate over questions affecting any individual Putative Class Member. Common questions of fact include but are not limited to:

    a.    Whether Defendants engaged in the wrongful conduct alleged herein;

    b.    The nature, scope and implementation of Defendants' unlawful, improper acts;

    c.    Whether Progressive, or its employee or agent, provided Class Members' personal information to K&P without permission;

    d.    Whether Defendants committed barratry by violating Section 38.12(a) or (b) of the Texas Penal Code;

    e.    Whether Defendants intended to obtain economic benefit from their actions;

    f.    Whether Defendants received revenues from their fraudulent venture, and the number of those revenues;

    g.    Whether Defendants conspired with one another to violate Texas barratry laws;

    h.    Whether K&P is owned and operated by lawyers;

    i.    Whether Progressive, or its agent, knowingly disclosed Plaintiffs' and other Class members' Driver's License Information to K&P; and

      j.      Whether Defendants will likely continue their solicitation and barratry practices unless enjoined from doing so.

43.     There are questions of law common to the Putative Class, and those questions predominate over questions affecting any individual Putative Class Members. Common questions of law include but are not limited to:

      a.      Whether Defendants' conduct in (1) making false representations about Barratry, (2) exchanging crash victims' personal information, and (3) acting unethically, constitute acts of fraud;

      b.      Whether Defendants' conduct common to the Putative Classes has resulted or will result in Defendants being enriched at the expense of Putative Class Members, or in Defendants retaining a benefit to the detriment and loss of Putative Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

      c.      Whether Defendants' conduct common to the Putative Classes demonstrates willfulness, malice, or recklessness, or whether Defendants proceeded with conscious disregard for the rights of others, therefore entitling Putative Class Members to punitive damages;

      d.      Whether K&P's veil should be pierced;

      e.      Whether Defendants entered into contracts, charged for, or collected any fees for employment obtained in violation of Texas Disciplinary Rule of Professional Conduct 7.03(a), (b) or (c);

      f.      Whether Defendants are liable under Texas Government Code §82.0651;

      g.      Whether Defendants had a duty to act ethically, and whether Defendants violated that duty; and

      h.      Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, or injunctive relief and, if so, in what nature and amount.

**<u>Typicality</u>**

44.     Typicality. *Fed. R. Civ. P. 23(a)(3).* Lead Plaintiffs' claims are typical of the claims of the Putative Class Members. Lead Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Lead Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the Putative Class.

**Adequacy**

45.     Adequacy. *Fed. R. Civ. P. 23(a)(4).* Lead Plaintiffs are adequate representatives of the proposed Putative Class because their interests coincide with and are not antagonistic to, the interests of the other Plaintiffs and Members of the Putative Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The non-lead Plaintiffs have no interests antagonistic to or conflicting with those of the Class. Lead Plaintiffs and their Counsel will fairly and adequately protect the interests of the Members of the Putative Class.

**Superiority**

46.     Superiority. *Fed. R. Civ. P. 23(b)(3).* Questions of law and fact common to the Putative Class Members predominate over questions affecting only individual Members, and class actions are superior to other available methods for fair and efficient adjudication of controversies. Liability will be determined based on a common set of facts and legal theories. Willfulness and scienter will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the Putative Class Members.

47.     The damages sought by each Member are such that individual prosecution for a majority of the Members would prove burdensome and expensive given the complex and extensive litigation required by Defendants' conduct—and would be burdensome and expensive on the federal judiciary system to resolve multiple litigations based on the same facts as a single class action. It would be almost impossible for Members of the Putative Class individually to redress effectively the wrongs done to them. Even if the Members of the Putative Class themselves could afford such individual litigation, it would still be an unnecessary burden on the courts.

48.     Furthermore, individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in one case.

## IX.    CAUSES OF ACTION

### A.    COUNT ONE: BARRATRY

49.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

50.    This claim is raised against both Defendants because they operated in concert with each other to commit barratry. Texas Penal Code § 38.12 includes sections criminalizing the facilitation of solicitation in addition to act of solicitation itself, which covers the acts of Progressive and any agent or employee acting on Progressive's behalf.

51.    Defendants have repeatedly and systematically violated the Texas Penal Code § 38.12 and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. Their violations include, but are not limited to, having: (1) K&P paid salespeople or representatives solicit prospective clients to sign a contract for legal services with intent to obtain an economic benefit; (2) K&P accepted employment that resulted from the solicitation of prospective clients; (3) K&P paid, given, or offered to pay or give anything of value to people not licensed to practice law for soliciting prospective clients (Progressive and third parties) for, or referring clients or prospective clients to K&P; (4) K&P solicited prospective clients through overreaching, harassment, or undue influence; (5) K&P solicited prospective clients with a false, fraudulent, misleading, deceptive, or unfair statement or claim; and/or (6) entered into agreements for, charged for, or collected a fee for professional employment obtained as a result of the wrongful solicitation of prospective clients.

52.    Thus, Defendants are liable to Plaintiffs and those similarly situated under Texas Government Code § 82.0651(a) and (c).

53.    Defendants are liable to Plaintiffs and those similarly situated for all fees and expenses Plaintiffs and those similarly situated paid to Defendants, and reasonable and necessary attorney's fees. Tex. Gov. Code §82.0651(b) and (d). Plaintiffs and those similarly situated are further entitled to recover a statutory penalty of $10,000 from each person who engaged in the subject barratry. *Id.* further entitled to recover a statutory penalty of $10,000 from each person who engaged in the subject barratry. *Id.*

54.    Texas Government Code § 82.0651 is to be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection. This class action is filed to precisely that end.

**B.    C**OUNT **T**WO**: C**ONSPIRACY

55.    Plaintiffs incorporate by reference the above paragraphs of this Complaint as if fully set forth here.

56.    This claim is raised against both Defendants because they operated in concert with each other to commit barratry.

57.    Defendants agreed and conspired to solicit Plaintiffs and those similarly situated. By engaging in the conduct described more fully above, Defendants acted in concert. Defendants intended and knew that the agreed acts would result in harm to Plaintiffs and the Class Members, because they knew their sales scheme violated advertisement rules for lawyers. They also knew the solicitations violated the Texas barratry statute, the prospective clients had not previously sought the advice of K&P and because they knew few, if any, would ever need a lawyer for the

services purportedly provided by Defendants or any other lawyers. Defendants needed to abide by the same barratry rules all Texas lawyers are but have intentionally tried to skirt them through their referral scheme.

58.     Defendants' acts and omissions in furtherance of their conspiracy proximately caused harm and damages to Plaintiffs and those similarly situated by attempting to induce them to pay fees to Defendants and infringing on their time that could have otherwise been used toward anything else. Plaintiffs and those similarly situated seek to recover all their actual, direct and consequential damages, general and special damages, and statutory penalties for Defendants' conspiracy.

59.     Defendants acted jointly, in concert, or in a conspiracy to commit barratry. Defendants' concerted conduct renders each and all of Defendants jointly and severally liable for Plaintiffs and the Class Members' damages and related statutory penalties.

## X.     DAMAGES

60.     Plaintiffs hereby adopt by reference each and every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

61.     Defendants' conduct and actions discussed above proximately caused injury to Plaintiffs, which resulted in:

    a.     Statutory damages for barratry;

    b.     Actual damages and treble damages under the Consumer Protection Claims;

    c.     Exemplary damages under the Consumer Protection Claims and Common-law Fraud;

    d.     Actual damages, including economic damages under all causes of action;

    e.     Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' actions.

    f.     Civil penalties;

g.    Prejudgment interest;

h.    Attorney's fees; and

i.    Costs of action.

62.    Plaintiffs also seek unliquidated damages within the jurisdictional limits of this Court.

## XI.    PERMANENT INJUNCTION

63.    Plaintiffs seek injunctive relief on behalf of the Putative Class pursuant to Rule 23(b)(2). Plaintiffs pray that the Court permanently enjoin Defendants from continuing their barratry scheme. In particular, Plaintiffs request that Defendants be permanently enjoined from (1) paying salespeople or representatives to solicit prospective clients to sign a contract for legal services with intent to obtain an economic benefit, (2) accepting employment that resulted from the solicitation of prospective clients, (3) paying, giving, or offering to pay or give anything of value to people not licensed to practice law for soliciting prospective clients for, or referring clients or prospective clients to K&P or any other law firm or lawyer, (4) soliciting prospective clients in connection with motor vehicle crashes, which was and is inherently overreaching, harassing, and unduly influential, and/or (5) entering into agreements for, charging for, or collecting a fee for professional employment obtained as a result of the wrongful solicitation of prospective clients for a lawyer or law firm.

## XII.    PUNITIVE DAMAGES

64.    Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth here.

65.    The wrong done to Plaintiffs by Defendants was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs seek punitive damages in an amount to be proven at trial.

## XIII.   ATTORNEY'S FEES

66.      Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

67.      Plaintiffs are entitled to recover reasonable attorney fees and request the attorney's fees be awarded under Texas Government Code § 82.0651.

## XIV.   INCORPORATION OF PARAGRAPHS

68.      Every paragraph in this Complaint is hereby incorporated into every other paragraph.

## XV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, awarding relief as follows:

    a.      Finding a class action is the most efficient and effective way to resolve the claims against Defendants;

    b.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

    c.      Holding that the doctrine of unjust enrichment applies and ordering Defendants to pay Plaintiffs all sums received by Defendants flowing from their illegal and unconscionable activities;

    d.      For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be determined, as allowable by law;

    e.      For an award of punitive damages, as allowable by law;

    f.      For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

    g.      Pre-and post-judgment interest on any amounts awarded; and

    h.      Any other relief that this court may deem just and proper.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*
**EKSM, LLP**
Jarrett L. Ellzey
Texas Bar No. 24040864
jellzey@eksm.com
Tom Kherkher
Texas Bar No. 24113389
tkherkher@eksm.com
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
4200 Montrose, Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFFS,
AND THOSE SIMILARLY SITUATED**

## **CERTIFICATE OF SERVICE**

I hereby certify the foregoing Second Amended Complaint has been served on all counsel of record via ECF and in accordance with the Local Rules and Federal Rules of Civil Procedure.


*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey