**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 4:24-cv-04423-KPE-PB |
| vs. | § § | |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., Florida Profit Corporation, | § § § § § § § | |
| *Defendants*. | § | |

**DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ii

NATURE AND STAGE OF PROCEEDINGS ....................................................................1

INTRODUCTION ...............................................................................................................2

STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT ...................................3

ARGUMENT AND AUTHORITIES...................................................................................4

I.      Plaintiffs Fail to State a Claim Against Progressive for Barratry. ......................4

II.     Plaintiffs Fail to State a Claim Against Progressive for Conspiracy. ..................7

        A.      Plaintiffs Fail to Allege All of the Elements of Conspiracy. ...................7

        B.      Plaintiffs Fail to Allege Facts Supporting a Theory of Vicarious Liability
                for a Progressive Employee's Rogue Actions. .......................................10

III.    Plaintiffs' Claims for Damages Are Unsupported. ............................................12

        A.      Plaintiffs Are Not Entitled to Injunctive Relief. ....................................12

        B.      Plaintiffs Fail to Plead Facts Supporting a Punitive Damages Claim....................13

CONCLUSION..................................................................................................................14

CERTIFICATE OF SERVICE ..........................................................................................16

i

## TABLE OF AUTHORITIES

**Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019) ............................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 4, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4, 8

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993) ....................................... 4

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996) .............................................. 8

*Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361 (N.D. Tex. 2021) ..................................... 13

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997) ....................................... 4, 13, 14

*Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760 (Tex. App.—San Antonio 2002, *pet. denied*) .................................................................................................................... 12

*Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145 (5th Cir. 2010) ........................... 4, 8

*Nguyen v. Watts*, 605 S.W.3d 761 (Tex. App.—Houston 2020) ........................................... 3, 5, 6

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) .......................................................... 12

*State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656 (Tex. 1994) .......................................................... 4

*Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563 (5th Cir. 2021) .................................................. 13

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995) ...................................................... 8

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) ........................................................................................................................ 4

*Zarzana v. Ashley*, 218 S.W.3d 152(Tex. App.—Houston 2007, *no pet.*) ............................. 10, 12


**Statutes**

Tex. Civ. Prac. & Rem. Code § 41.003 .................................................................... 4, 13

Tex. Gov't Code § 82.0651 ..................................................................................... 3, 5, 6

Tex. Penal Code § 38.01 ................................................................................................. 6

Tex. Penal Code § 38.12 ..................................................................................... 3, 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1, 4

Tex. R. Prof. Conduct 7.3 ................................................................................................. 3, 5, 7

**NATURE AND STAGE OF PROCEEDINGS**

This action remains in the pleading stage, as Plaintiffs Kelly Cook and Esther Kelley-Cook have now submitted their third iteration of the complaint in this case. Plaintiffs first filed their class action complaint on November 11, 2024, against Defendants Progressive Casualty Insurance Company ("Progressive") and The Law Offices of Kanner & Pintaluga, P.A. ("K&P") in the United States District Court for the Southern District of Texas, Houston Division. On January 15, 2025, Defendants moved to dismiss the complaint. Plaintiffs then amended their complaint on February 5, 2025. Defendants both moved to dismiss the amended complaint on March 5, 2025. After a hearing on the motions to dismiss, the Court dismissed with prejudice Plaintiffs' Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO") and unjust enrichment claims. As against Progressive, the Court also dismissed without prejudice all of Plaintiffs' remaining claims—for barratry, civil conspiracy, violation of the Driver's Privacy Protection Act and the Deceptive Trade Practices Act, and injunctive relief.

Plaintiffs have now filed their Second Amended Class Action Complaint, alleging two counts: barratry and conspiracy. Plaintiffs assert that Progressive or an unidentified Progressive employee, in conjunction with K&P, engaged in a conspiracy to commit barratry. Plaintiffs now allege that this scheme operated as follows: Progressive provided a third party with the personal information of individuals involved in motor vehicle crashes, which K&P subsequently obtained from the third party to solicit legal representation for filing claims against Progressive.

Plaintiffs continue to assert that this alleged scheme violates various statutes and ethical rules, including the Texas Penal Code and the Texas Disciplinary Rules of Professional Conduct. They seek to represent two classes. Progressive moves to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to allege sufficient facts to support the claims against Progressive.

1

**INTRODUCTION**

Despite three attempts, Plaintiffs' claims remain legally insufficient to state a claim against Progressive.  In acknowledgement that an agreement between Progressive and plaintiffs' personal injury law firm K&P would make no sense, the current story seems to be that an unidentified rogue employee at Progressive allegedly collaborates with an unknown third party to sell accident victims' information, which is then purportedly sold to K&P so that K&P or its unknown agent can solicit clients to file claims with Progressive and/or sue Progressive insureds.  (*See* Second Am. Class Action Compl. ("Compl.") ¶ 28, ECF No. 46.)  (That said, Plaintiffs also claim that Progressive provided Plaintiffs' phone numbers directly to K&P, despite their contradictory assertion that the alleged scheme involved Progressive selling Plaintiffs' information to a third party. (*Compare id.* ¶ 26, *with id.* ¶ 28.))  Plaintiffs cannot allege that Progressive itself committed barratry.  Plaintiffs also fail to plausibly demonstrate how this alleged scheme benefits Progressive, disingenuously suggesting that Progressive somehow benefits from paying out meritless claims that might otherwise never have been asserted; fail to allege Progressive had the necessary meeting of minds to commit a conspiracy with K&P, especially when they allege that K&P obtains the information from a third party rather than Progressive; and fail to provide any factual or legal support for their position that Progressive should be liable for the acts of a purported employee, even though he or she clearly acted outside the scope of employment.  Finally, Plaintiffs do not provide any evidence of entitlement to injunctive relief or punitive damages as a result of this scheme.

Plaintiffs' claims of barratry and conspiracy remain inadequately pleaded and devoid of factual and legal support.  Progressive respectfully requests that this Court dismiss the Second Amended Complaint against Progressive in its entirety, with prejudice.

2

## STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

1.      *Whether Plaintiffs state a claim for barratry against Progressive.*  For Progressive to be civilly liable for barratry, Progressive must have solicited Plaintiffs through actions that violate the criminal barratry statutes or a Rule of Professional Conduct.  Tex. Gov't Code § 82.0651(c); Tex. Penal Code § 38.12(a), (b); Tex. R. Prof. Conduct 7.3.  Courts interpret the term "solicited" to mean that the individual received a prohibited communication as a potential client, made by or on behalf of an attorney seeking employment.  *Nguyen v. Watts*, 605 S.W.3d 761, 779 (Tex. App.—Houston 2020, *pet. denied*).  Facilitating solicitation is not enough.  Plaintiffs do not allege that Progressive communicated with them, a necessary element for a civil barratry claim.

2.      *Whether Plaintiffs state a claim for conspiracy against Progressive.*  Plaintiffs fail to sufficiently allege that there was a meeting of the minds between K&P and Progressive, or what the object of their purported conspiracy was.  Without alleging these elements of conspiracy, Plaintiffs cannot sustain a conspiracy claim.

3.      *Whether Progressive is vicariously liable for the actions of an employee acting outside of the scope of employment.*  Plaintiffs fail to present any facts that would render Progressive liable for its employee's alleged acts, which were outside the scope of employment and did not benefit Progressive.

4.      *Whether Plaintiffs allege facts that meet the requirements for injunctive relief.*  Plaintiffs fail to demonstrate any irreparable injury or inadequacy of legal remedies, which are necessary to obtain injunctive relief.

5.      *Whether Plaintiffs allege facts supporting their punitive damages claim.*  Plaintiffs have not provided evidence of fraudulent, malicious, or grossly negligent behavior by Progressive, or that Progressive authorized or approved any such behavior by an employee.  They therefore

3

have not alleged facts supporting an entitlement to punitive damages.  *See* Tex. Civ. Prac. & Rem. Code § 41.003(a), (b); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (citation omitted).

ARGUMENT AND AUTHORITIES

Both of Plaintiffs' causes of action must be dismissed for failure to state a claim.  To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."  *Id.* (alteration added).  Unsupported allegations made on information and belief likewise need not be credited on a motion to dismiss.  *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

I.      **Plaintiffs Fail to State a Claim Against Progressive for Barratry.**

Plaintiffs assert a claim for barratry against Progressive, but there is no allegation that Progressive ever committed any act of solicitation that could support liability for Plaintiffs' civil barratry claim.  Barratry is the "solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit."  *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.1 (Tex. 1994) (citation omitted).  For a defendant to be civilly liable for barratry where, as here, no contract

4

for legal services was procured, a plaintiff must have been "solicited by conduct violating" the criminal barratry statutes or a Rule of Professional Conduct. Tex. Gov't Code § 82.0651(c); *see also* Tex. Penal Code § 38.12(a), (b); Tex. R. Prof. Conduct 7.3.[1]

The phrase "solicited by" in the statute authorizing civil barratry claims is "construed to mean a person has experienced a *prohibited communication* directed toward him or her as a prospective client *by or on behalf of an attorney* in an effort to gain employment." *Nguyen*, 605 S.W.3d at 779 (emphasis added). For example, in *Nguyen*, the court concluded that even though the unauthorized filing of presentment forms violated the criminal barratry laws, it did not support a civil barratry claim because it was not directed toward the plaintiffs. *Id.* at 776-79. In other words, while a criminal action for barratry may involve actions other than solicitation, civil barratry, by definition, involves an attorney making a communication to a prospective client.

Here, there is no allegation that Progressive or any of its employees communicated with either Plaintiff at any time. Plaintiffs acknowledge they had no direct or indirect communication from Progressive and were never "solicited by" Progressive, any Progressive employee, or anyone acting on Progressive's behalf. (Compl. ¶ 23 ("the caller was not from Progressive"), ¶¶ 23-24 (callers who spoke to Plaintiffs represented themselves as calling from K&P), ¶ 28 (alleged conspiracy involves calls from K&P or third party "case runners," but not Progressive); ¶ 37 (proposed class members must have been "contacted by K&P").) Consequently, they fail to allege any actionable conduct by Progressive. Furthermore, Progressive is not a law firm and does not offer legal services. Even if Plaintiffs had alleged they were solicited by Progressive or someone

---

[1] Although Progressive, as neither a lawyer nor a law firm, is not bound to comply with the Texas Rules of Professional Conduct, Rule 7.3 of the Rules of Professional Conduct does allow for solicitation if the communication is to another lawyer. Tex. R. Prof. Conduct 7.3(d)(2)(i). Plaintiff Kelly Cook is an attorney. (Compl. ¶ 23.)

acting on its behalf (which they did not), it is not facially plausible to assert that Progressive was soliciting prospective clients.

In their Second Amended Complaint, Plaintiffs assert that the criminal barratry statute "includes sections criminalizing the facilitation of solicitation in addition to [the] act of solicitation itself," purportedly covering "the acts of Progressive and any agent or employee acting on Progressive's behalf." (Compl. ¶ 50 (citing Tex. Penal Code § 38.12).)  However, this assertion contradicts the text of the civil barratry statute, which allows claims only when a person is "solicited by" an act constituting criminal barratry.  It also conflicts with the holding of *Nguyen* that a civil barratry claim requires a communication.  What is more, Plaintiffs fail to specify any provision criminalizing the facilitation of barratry—Section 38.12 does not contain the word "facilitate" or its variations.  Paragraph 33 of the Second Amended Complaint refers to Sections 38.12(a)(4) and (b)(1), which criminalize "pay[ing] or giv[ing] or offer[ing] to pay or give a person money or anything of value to solicit employment" and "knowingly financ[ing] the commission of an offense under Subsection (a)."[2]  Tex. Penal Code § 38.12(a)(4), (b)(1).  But there is no allegation that Progressive or any Progressive employee paid, gave, or offered Plaintiffs money to solicit employment.  Nor is there any allegation that Progressive or its employees financed—that is, provided funds or capital or furnished with necessary funds, Tex. Penal Code § 38.01(4)— K&P's alleged solicitation.  In fact, any funds or capital are (falsely) alleged to have been paid by K&P to Progressive.  (Compl. ¶¶ 28-29, ECF No. 46.)

---

[2] Paragraph 33 also refers to provisions under Texas Penal Code Section 38.12(d), but that section does not support a civil barratry claim under Government Code Section 82.0651(c), and in any event, the section only applies to "an attorney, chiropractor, physician, surgeon, or private investigator licensed to practice in this state or any person licensed, certified, or registered by a health care regulatory agency of this state"—Progressive is none of these.  Tex. Penal Code § 38.12(d)(1); Tex. Gov't Code § 82.0651(c).

Plaintiffs' claim for barratry should be dismissed with prejudice as to Progressive because the Second Amended Complaint acknowledges that Progressive never solicited Plaintiffs. Nor are there any allegations that would support an assertion that Progressive committed any other act of criminal barratry. Additionally, even if the claim for barratry were to survive, that claim should be dismissed as to Mr. Cook; he is an attorney, and so neither Progressive nor K&P can be liable for barratry to the extent the claim is based on communications with him. Tex. R. Prof. Conduct 7.3(d)(2)(i).

## II.    Plaintiffs Fail to State a Claim Against Progressive for Conspiracy.

Plaintiffs allege that Progressive and K&P conspired with each other to commit barratry. (Compl. ¶ 56.) Indeed, Plaintiffs admit that they have no barratry claim against Progressive, except insofar as Progressive conspired with K&P or is vicariously liable for a rogue Progressive employee's actions. (*See* Compl. ¶¶ 50, 13, 15-16; *see also* Pls.' Resp. in Opp'n to Progressive's Mot. to Dismiss, ECF No. 36 at 4.) But Plaintiffs do not adequately allege that Progressive conspired with K&P or that an employee for whom Progressive is vicariously liable participated in any such conspiracy.

### A.    Plaintiffs Fail to Allege All of the Elements of Conspiracy.

Despite numerous attempts and creative formulations in three attempts to state a claim, Plaintiffs still fail to properly allege a claim for conspiracy. The elements of civil conspiracy are well-established: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (citation omitted). Plaintiffs repeatedly allege, without any factual basis, that "Defendants agreed and conspired," that "Defendants acted in concert," and that "Defendants acted jointly, in concert, or in a conspiracy to commit barratry." (Compl. ¶¶ 57, 59.) These are merely conclusory

allegations that must be disregarded.  *Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements").  Plaintiffs assert no facts plausibly suggesting that Progressive shared with anyone an object to be accomplished or a meeting of the minds.

First, Plaintiffs do not provide facts indicating that the alleged conspiracy shared an object to be accomplished.  Plaintiffs allege that Progressive and K&P "operated in concert with each other to commit barratry."  (Compl. ¶ 56.)  In other words, the alleged object of the conspiracy is to stir up clients for a plaintiffs' personal injury law firm so that the firm can then file frivolous claims against Progressive or even sue Progressive's own insureds for injuries sustained in auto accidents.  This allegation is simply implausible on its face.  *Cf. Montoya*, 614 F.3d at 148-49 (citing *Twombly*, 550 U.S. at 555).  The story becomes even more implausible when applied to Plaintiffs' own claims.  After all, neither Plaintiff was involved in the auto accident.  (Compl. ¶ 25.)  Why on earth would Progressive conspire to invite people who were not involved in an auto accident to file injury claims with Progressive?  No referral fees or claim closure statistics could be worth the increased costs arising from meritless claims and suits against Progressive's insureds.

Second, Plaintiffs also fail to demonstrate any meeting of the minds.  The Second Amended Complaint lacks allegations showing that both Progressive and K&P had a mutual understanding or agreement to accomplish that purported objective.  "For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement.  One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge."  *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) (citations omitted); *see also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) (conspiracy claim "requires specific intent").  Aside from conclusory references to agreements, the Second

8

Amended Complaint does not allege any facts suggesting that Progressive had any idea what K&P was doing. Merely alleging that Progressive (or a rogue agent as discussed below) provided information to K&P or a third party is not enough to substantiate a conspiracy claim. Nowhere do Plaintiffs allege that Progressive knew what K&P would do with the information Progressive allegedly provided or intended that K&P use that information to commit barratry. Taking Plaintiffs' allegations as true, Progressive provided information to K&P—or maybe not even directly to K&P—for unknown reasons and then K&P allegedly solicited Plaintiffs in Texas in violation of the barratry statute on its own. It requires an inferential leap to assume Progressive knew what K&P (or the third party) was going to do with the information provided. Plaintiffs cannot fill in the gaps of their Second Amended Complaint with such an inferential leap.

Furthermore, Plaintiffs' new allegations that Progressive "sold Plaintiffs' information to a case runner" and that K&P purchased "leads" from these third-party case runners (Compl. ¶ 28) refute the allegation that Progressive and K&P had a meeting of the minds. Again, there is no allegation that Progressive (or its rogue employee) knew that information it shared with a third party *would be purchased by K&P*. The adjuster might have assumed the case runner was using that information itself. If there was no direct interaction between Progressive and K&P, and if the third party case runners sell information to multiple law firms, then Plaintiffs fail to plead a meeting of the minds specifically between Progressive and K&P—which are the two parties that allegedly conspired.

Plaintiffs not only fail to allege the essential elements of a civil conspiracy, but their theory collapses under the weight of its own absurdity. The Second Amended Complaint is devoid of any factual allegations establishing a meeting of the minds or a specific intent to conspire. More fundamentally, as has been emphasized from the outset of this case, the notion that Progressive—

9

an insurance company—would conspire with a law firm for the purpose of enabling that firm to file meritless claims against it and its insureds defies logic and common sense.  It would make no sense for Progressive to facilitate claims or lawsuits against itself, particularly when it comes to claims that, by Plaintiffs' own admission, would not have otherwise been filed.  This proposition is not only unsupported by the pleadings, it is patently irrational.  Courts are not required to credit such speculative and self-defeating narratives.  The Court should dismiss the conspiracy claim with prejudice.

> **B.      Plaintiffs Fail to Allege Facts Supporting a Theory of Vicarious Liability for a Progressive Employee's Rogue Actions.**

Plaintiffs may try to argue that even if Progressive itself was not conspiring with K&P, it is still liable for conspiracy (and thus for barratry) because it is vicariously liable for an employee adjuster who *was* conspiring with K&P.  This argument must fail.  Plaintiffs assert that "Progressive is liable for the actions of any adjuster employed by Progressive [who] illegally sold accident victim information to K&P," or alternatively that Progressive failed to provide proper oversight of its employees.  (Compl. ¶¶ 15-16.)  But Plaintiffs' argument that Progressive should be liable for an employee acting outside of the scope of his or her employment is fundamentally flawed.  To establish vicarious liability for an employee's misconduct, a plaintiff must plead: "(1) an agency relationship existed between the employee and the employer, (2) the employee committed the act, and (3) the act was in the course and scope of the employee's authority." *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App.—Houston 2007, *no pet*.).  To substantiate the third factor, that an employee acted within the course and scope of employment, the plaintiff must plausibly allege that the conduct occurred "(1) within the general authority given the employee, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed." *Id.*

Plaintiffs did not—and cannot—allege facts supporting a theory that an alleged "adjuster employed by Progressive [who] illegally sold accident victim information to K&P" was acting within the course and scope of his or her authority as a Progressive employee.  (Compl. ¶ 15.) Plaintiffs allege no facts about the alleged employee's general authority, about his or her role at Progressive, or about the objective of his or her employment.  But the notion that Progressive employees have authority or are meant to illegally sell accident victim information, or that Progressive's business is benefited by such illegal sales, beggars belief.  Plaintiffs do not even attempt to allege that any employee at Progressive is employed to sell accident victim information to law firms for solicitation purposes.

As an insurance company, Progressive's financial objective is to manage risk accurately, not to facilitate schemes that lead to unnecessary payouts.  Plaintiffs fail to allege any facts showing how the scheme they contrived would further Progressive's business.  Plaintiffs assert that Progressive gains from selling accident victims' information by settling claims quickly (Compl. ¶ 28), but this argument collapses under scrutiny.  Plaintiffs themselves acknowledge that the underlying car accident—which they were not even present for—resulted in no injuries and that no claims were filed; in other words, there were no claims to "quickly" settle.  (*Id*. ¶¶ 22, 24.) Encouraging an employee to sell Plaintiffs' information to K&P, only for K&P to file a claim and obtain $10,000 (instead of nothing) for a meritless claim would result in a financial loss for Progressive, not a benefit.  This scenario does not align with Progressive's business interests, and Plaintiffs do not—and cannot—allege any facts showing that it does.

Plaintiffs' allegation that Progressive fails to "adequately investigate or provide proper oversight to the dissemination of personal information of its insureds" also lacks merit.  (*See id*. ¶ 16.)  Plaintiffs allege that Progressive's adjusters were acting "in direct violation of Texas law

and consumer privacy norms" (*id.* ¶ 4), but employers are generally not liable for criminal acts of employees that are unforeseeable considering the employee's duties. *See Zarzana*, 218 S.W.3d at 160. "[U]nder Texas law, an agent's 'serious criminal activity' is almost never taken within the scope of authority granted by the principal." *Ross v. Marshall*, 426 F.3d 745, 764-65 & n.85 (5th Cir. 2005). When an employee engages in illegal activities that contravene the employer's interests, the responsibility does not fall on the employer. For example, where a brokerage employee has authority to open accounts and purchase and sell securities as directed by clients, his authority does not extend to stealing money from those clients. *Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 768 (Tex. App.—San Antonio 2002, *pet. denied*). Plaintiffs have not presented any facts demonstrating that Progressive authorized or condoned its alleged employee's illegal actions or alleged a plausible gain that Progressive would obtain in condoning such actions.

Thus, Plaintiffs fail to allege sufficient facts to establish that Progressive should be vicariously liable for the wrongdoing of an employee because any employee engaged in the actions alleged by Plaintiffs was acting outside the scope of employment. Plaintiffs' conspiracy claim should be dismissed with prejudice even if it is based on a vicarious liability theory.

## III.    Plaintiffs' Claims for Damages Are Unsupported.

If Plaintiffs' claims against Progressive are dismissed, they are not entitled to recover damages and Plaintiffs' claims for injunctive relief and punitive damages are moot. But even if either of the claims survives dismissal, Plaintiffs are not entitled to recover all of the damages they seek in the Second Amended Complaint.

### A.    Plaintiffs Are Not Entitled to Injunctive Relief.

Plaintiffs request injunctive relief in addition to their alleged damages. (Compl. ¶ 63.) In order to obtain a permanent injunction, Plaintiffs must show "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

12

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 368 (N.D. Tex. 2021) (citation and quotations omitted). Additionally, Plaintiffs seeking an injunction must demonstrate a likelihood of success on the merits—if "plaintiffs' claims were properly dismissed, they cannot show a likelihood of success on the merits" and their claim for injunctive relief must fail. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 576 (5th Cir. 2021). To the extent that Plaintiffs' substantive claims are dismissed, their request for injunctive relief must be dismissed as well.

But even if any claim survives, the request for injunctive relief should be dismissed. Plaintiffs do not even attempt to allege that their injury is irreparable; that their remedies at law are inadequate; or that a remedy in equity is warranted. As discussed above, Plaintiffs fail to allege any injury caused by Progressive, let alone any irreparable injury. Further, to the extent Plaintiffs were injured by any action by Progressive, their remedies at law, which they are pursuing in this action, are adequate to redress any harm to them.

**B.      Plaintiffs Fail to Plead Facts Supporting a Punitive Damages Claim.**

Under Texas law, punitive damages are available only when the plaintiff can prove fraud, malice, or gross negligence by clear and convincing evidence. Tex. Civ. Prac. & Rem. Code § 41.003(a)-(b). Additionally, punitive damages are not available based simply on *respondeat superior*—the act giving rise to punitive damages must have been either done by the corporation itself or "previously authorized or subsequently . . . approved by the corporation." *Hammerly Oaks*, 958 S.W.2d at 391 (citation omitted).

Plaintiffs fail to allege that Progressive engaged in fraudulent, malicious, or grossly negligent behavior. Their allegations center around the supposed unauthorized sharing of

13

Plaintiffs' phone number, but Plaintiffs do not allege that this was done with the requisite intent or recklessness to warrant punitive damages. Plaintiffs' claims are speculative and lack the clear and convincing evidence necessary to support a claim for punitive damages.

Even if the Plaintiffs could establish that an employee of Progressive engaged in wrongful conduct, they have not pled that such conduct was authorized or approved by Progressive. Punitive damages cannot be awarded based on *respondeat superior* unless the corporation itself committed the act or the act was previously authorized or subsequently approved by the corporation. *See id.* Plaintiffs have not—and cannot—allege any facts that demonstrate corporate authorization or approval of the alleged wrongful acts.

Because Plaintiffs fail to allege facts remotely suggesting fraud, malice, or gross negligence on the part of Progressive, the Court should dismiss with prejudice Plaintiffs' request for punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant Progressive Casualty Insurance Company respectfully requests that this Court grant its Motion to Dismiss. Plaintiffs' claims for barratry and conspiracy are inadequately pleaded and unsupported. The allegations against Progressive are not only implausible but also legally insufficient. Plaintiffs have now had three tries to plead a claim against Progressive, but have fallen well short each time. Progressive respectfully requests that this Court dismiss the Second Amended Complaint in its entirety with prejudice and grant any further relief that the Court deems just and proper.

Dated: May 15, 2025

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Kymberly Kochis*
Kymberly Kochis (*pro hac vice*)

14

1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, NY 10023
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
kymkochis@eversheds-sutherland.com

James L. Silliman
State Bar No. 24081416
Fed. ID No. 2365032
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
jimsilliman@eversheds-sutherland.com

*Attorneys for Defendant*
*Progressive Casualty Insurance Company*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, a copy of the foregoing was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel and parties of record.

/s/ Kymberly Kochis
Kymberly Kochis (*pro hac vice*)