**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | Civil Action No. 4:24-cv-4423 |
| vs. | §<br>§ | JURY TRIAL DEMANDED |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., a Florida Profit Corporation, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants.* | §<br>§<br>§ | |

**PLAINTIFFS' RESPONSE TO DEFENDANT THE LAW OFFICES OF KANNER & PINTALUGA, P.A.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE KEITH ELLISON:

COME NOW Plaintiffs Kelly Cook and Esther Kelly-Cook filing this Response to Defendant The Law Offices of Kanner & Pintaluga, P.A.'s Motion to Dismiss Plaintiff's Second Amended Class Action Complaint Pursuant to Rule 12(b)(6), and would respectfully show as follows:

## I.    INTRODUCTION

In its Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Motion to Dismiss"), Defendant The Law Offices of Kanner & Pintaluga, P.A. ("K&P" or "Defendant") has again provided this Court with neither a factual nor a legal basis for dismissing Plaintiffs' Amended Class Action Complaint ("Complaint"). As with its first Motion to Dismiss, Defendant's basis of dismissal requires alternately ignoring or decontextualizing the facts Plaintiffs present, followed by improperly applying legal standards, and fails to provide a legitimate basis for

dismissal. Accordingly, its Motion to Dismiss must be denied. Alternatively, if this Court determines that Plaintiffs' Complaint falls short of the governing standard, Plaintiffs request an opportunity to file an amended complaint setting forth additional facts in support of their claims.

## II.    LEGAL STANDARD

In reviewing a complaint on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must consider all facts alleged in the complaint as true and construe the pleadings in a light most favorable to the plaintiff. *Paselk v. Texas*, No. 4:12cv754, 2013 U.S. Dist. LEXIS 127420, at *14 (E.D. Tex. June 6, 2013) (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994)). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) requires more than labels and conclusions or "a formulaic recitation of the elements of a cause of action," it does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Twombly* and *Iqbal* did not abrogate the notice standard pleading of Rule 8(a)(2) but confirmed that Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim should not be dismissed so long as there are "enough facts to state a claim to relief that is plausible on its face." *Bunch v. Mollabashy*, No. 3:13-CV-1075-G (BH), 2015 U.S. Dist. LEXIS 38717, at *13 (N.D. Tex. Mar. 26, 2015) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Paselk*, 2013 U.S. Dist. LEXIS 127420 at *14.

Rule 12(b)(1) allows parties to challenge the subject matter jurisdiction of the district court to hear a case. *See* Fed. R. Civ. P. 12(b)(1). A claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when "the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (cleaned up). In evaluating a Rule 12(b)(1) motion, the Court accepts all well-pleaded factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### III.    ARGUMENT

The specific and well-supported facts in the Complaint, which the Court must construe as true, support the plausible inference that K&P is culpable for the harm alleged. Accordingly, Plaintiffs' claims fully satisfy the governing pleading standards and dismissal is inappropriate.

### A.    Mr. Cook has established injury in fact for Article III standing.

Both Plaintiffs have standing to bring the claims asserted in their Complaint because they both suffered concrete injuries as a direct result of K&P's illegal access of their personal and sensitive information that resulted in the illegal solicitation phone call that both Plaintiffs participated in.

To have Article III standing, Mr. Cook must show that he "suffered an invasion of a legally protected interest that is concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A "concrete" injury is not required to be tangible. "Although tangible injuries are perhaps

easier to recognize[,] ... intangible injuries can nevertheless be concrete." *Id.* at 340. When a plaintiff asserts harm to an intangible interest, courts look to "both history and the judgment of Congress" to determine whether that injury satisfies Article III's constitutional minimum. *Id.* It is abundantly clear that there is a statutory basis for injury for barratry; K&P's Motion to Dismiss provides multiple statutes providing a right of action and cognizable injury to victims of barratry. The history of common law injury likewise supports a finding of Article III standing. "Because the case-or-controversy requirement is 'grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 691 (5th Cir. 2021) (quoting *Spokeo*, 136 S. Ct. at 1549).

Courts in this District have recognized invasion of privacy as a basis of injury under Texas barratry claims. *See Monson v. McClenny, Moseley & Associates, PLLC*, No. 4:23-CV-00928, 2024 WL 1078303, at *7 (S.D. Tex. Feb. 23, 2024), *adopted at*, No. 4:23-CV-00928, 2024 WL 1291534 (S.D. Tex. Mar. 25, 2024) (holding that a single text message "by itself, qualifies as a concrete injury that gives [the plaintiff] standing to sue. Moreover, even if Section 82.0651 were not concerned with safeguarding privacy rights, [the plaintiff's] proposed amended complaint nonetheless has articulated a cognizable harm—namely, the intrusion upon her seclusion resulting from the prohibited solicitations. This only bolsters the conclusion that [the plaintiff] has standing to bring her claims.").

Mr. Cook's asserted injury bears a close relationship to the common law tort of invasion of privacy; Mr. Cook has established injury in fact for Article III standing. K&P argues that Mr. Cook did not suffer an invasion of his privacy because only Dr. Kelley-Cook's phone number received a solicitation phone call, but this argument fails on its face. The Complaint clearly states

that both Mr. Cook's and Dr. Kelley-Cook's personal and sensitive information were listed on the vehicle registration information from which K&P (or its agent) obtained Dr. Kelley-Cook's phone number. Compl. ¶ 25, ECF No. 46. K&P accessed and obtained both Plaintiffs' sensitive data in a clear violation of their privacy in pursuit of their illegal solicitation scheme.[1] K&P's argument further fails in that regardless of Mr. Cook's "voluntarily" taking the phone from his wife and speaking with the solicitation agent; it was Mr. Cook who was directly solicited. Compl. ¶ 23. Mr. Cook was the party who was offered $10,000 for retaining K&P, and it was to Mr. Cook that the caller represented she was calling from K&P. *Id.*

**B.      Plaintiffs' Complaint sufficiently pleads barratry claims.**

As pled in Plaintiffs' Complaint, K&P, or its agent, solicited Plaintiffs by calling Dr. Kelley-Cook's phone number multiple times and offering Plaintiffs money in exchange for filing a lawsuit, which is a direct violation of both the civil and penal laws prohibiting barratry in the State of Texas. Compl. ¶ 23–24. Plaintiffs' claim is raised under Texas Government Code § 82.0651(d), which permits civil recovery to victims of barratry who did not enter an agreement with the soliciting attorney. K&P's desperate and convoluted argument nitpicking the specifics of each discrete subpart of each rule and statute does not hold up under scrutiny. To begin with, the statutory basis for barratry claims is not nearly so narrow as K&P argues. Section 82.0651, by its own terms, "shall be liberally construed and applied to promote its underlying purposes." Tex. Gov't Code Ann. § 82.0651(e). Moreover, the "provisions of [§ 82.0651] are not exclusive." *Id.* at § 82.0651(f).

---

[1]      K&P is attempting to circumvent liability on a technicality. If K&P had called a landline associated with Plaintiffs' residence rather than a cell number, then it could not argue that only one Plaintiff had suffered an injury if both participated in the phone call. The same situation occurred here: K&P obtained and misused both Plaintiffs' sensitive information and both Plaintiffs participated in the call.

1. K&P violated Texas Rule of Professional Conduct 7.03.

The Court should disregard K&P's attempt to divide and conquer the Texas barratry schemes. Plaintiffs cite to K&P's violation of Texas Rule of Professional Conduct 7.03 as evidence of K&P's barratry rather than as a basis of an independent claim; yet K&P asserts Plaintiffs cannot prove their claims under § 82.0651 without proving a violation of the disciplinary rules. This type of convoluted statutory interpretation stretches both regulatory schemes to the point of uselessness. Regardless, K&P's argument claiming their solicitation was "permitted" under the disciplinary rules because Mr. Cook happens to be a lawyer is without merit. The intent of Rule 7.03 was not to exempt any lawyer from ever receiving an unwanted solicitation call; rather, the Rule was intended to engender civility and communication in the legal community and to allow lawyers to refer clients to other lawyers, *within their legal capacity*, without getting slammed with barratry claims. Ergo, Rule 7.03 only allows solicitation "targeting" other lawyers, but as K&P itself points out, Mr. Cook was not the "target" of K&P's solicitation. The call was made to Dr. Kelley-Cook, a physician, and Mr. Cook received the call only when Dr. Kelley-Cook handed him the phone. Compl. ¶ 23–24. Accordingly, K&P's solicitation violated Texas Disciplinary Rule 7.03.

2. K&P violated Texas Penal Code § 38.12.

K&P's attempt to circumvent § 82.0651 by relying on specifics in Texas Penal Code § 38.12 likewise fails. Regardless of whether Plaintiffs' claims under § 82.0651(d) rely on all or only some of § 38.12, Plaintiffs have clearly and fully brought proper barratry claims against K&P. K&P hangs its entire argument on the claim that Plaintiffs made no "ultimate facts" regarding K&P's knowing finance of the commission of an offense, but Plaintiffs' Complaint very obviously lays out the mechanism by which K&P knowingly finances solicitation. Paragraph 28 of Plaintiffs' Complaint states that K&P purchases either accident victim information (so it can solicit on its

own behalf) or fully endorsed accident victim representation packets from its case runner (financing the case runner's solicitation). The Complaint very clearly states that K&P knowingly financed the commission of the offense of barratry. *See also* Compl. ¶ 33(c).

Plaintiffs have properly raised barratry claims against K&P based on both the common law understanding of the claim and the statutory definitions. By stripping each statute down to its bare essentials and parsing every discrete statutory item into oblivion, K&P's argument denudes all Texas barratry statutes of any meaningful application; K&P seeks to direct the Court's attention to each individual tree in hopes that it will miss the very obvious forest. Plaintiffs' barratry claims are sufficient under Rule 8 and should not be dismissed.

**C.      Plaintiffs' Complaint sufficiently pleads class claims.**

As a preliminary matter, Plaintiffs do not seek to include individuals who signed representation agreements with K&P in their class definition. Plaintiffs seek to certify a class of individuals who received unwanted solicitation from K&P or K&P's agent who did not sign a representation agreement. This will be made clear in Plaintiffs' forthcoming motion for class certification, and the Court will have an opportunity to consider issues related to Rule 23 at that appropriate time. The remainder of K&P's argument concerning class ascertainability is both premature and meritless.

**1.      <u>Dismissal of class claims is premature.</u>**

Because of the distinction between a motion to dismiss class allegations and class certification analysis, "Courts may strike class allegations at the pleadings stage in only rare cases." *Haynes v. Shonaz Foods, Inc.*, No. 1:24-CV-407-RP, 2025 WL 627525, at *8 (W.D. Tex. Feb. 19, 2025) (quoting *Delarue v. State Farm Lloyds*, No. 1:09-CV-237, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010)). "A court may strike the class allegations on the pleadings only

'[w]here it is *facially apparent* from the pleadings that there is no ascertainable class.'" *Id*. (quoting *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). "This relief is only granted in rare cases . . . and generally denied as premature when no discovery has yet taken place." *Flores v. S. Response Services Inc.*, No. 2:21-CV-04021, 2022 WL 3718050, at *3 (W.D. La. Aug. 29, 2022) (citing *Starling v. J Wales Home Sols. LLC*, No. 4:21-CV-01261-O, 2022 WL 1156021, at *2 (N.D. Tex. Apr. 19, 2022)).

"When the defendant 'has not answered, discovery has not commenced' and 'no motion for class certification has been filed,' courts often deny motions to strike class allegations as premature." *Haynes*, 2025 WL 627525, at *8 (quoting *Delarue*, 2010 WL 11530499, at *5; *Gant v. Whynotleaseit, LLC*, No. CV H-13-3657, 2014 WL 12606313, at *2 (S.D. Tex. Dec. 11, 2014), *adopted at*, No. CV H-13-3657, 2015 WL 12804529 (S.D. Tex. Jan. 16, 2015); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Laboratory Products, Inc.*, No. CV 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018)). *See also Monson*, 2024 WL 1078303, at *11 (denying the defendant's request for dismissal because "given the case-altering consequences of striking class allegations, the Court deems it appropriate to solicit fuller briefing before determining if any class action is potentially viable even on the face of [the plaintiff's] pleading."). Accordingly, K&P's request for dismissal of Plaintiffs' class claims is premature. No discovery has been conducted, no request for class certification has been filed, K&P has not even answered Plaintiffs' Complaint.

### 2.  Plaintiffs' proposed class is ascertainable.

Regardless, the class requested by Plaintiffs is not nearly so individualized as K&P claims and K&P's argument otherwise again parcels Texas barratry statutes into uselessness. By K&P's logic, no barratry class could ever proceed because the underlying statute itself prevents it. Barratry claims are not *per se* unsuitable for class resolution; the individualized questions K&P posits to

potential class members are typical of any case proceeding as a class. K&P's question of "whether the caller was motivated by pecuniary gain" isn't even a question for the putative class members; the caller's motivation in obtaining lucrative representation agreements on behalf of accident victims is self-evident. Likewise, whether the caller offered legal services that K&P reasonably should have known the person needed is equally self-evident—the calls occurred as a direct result of the putative class members' involvement in a vehicle accident and offered legal services relating to the accident.

K&P's parsing of Texas Disciplinary Rule 7.03(b) safe harbor exception to solicitation fares no better. As described above, K&P, or its agent, did not solicit Mr. Cook in his legal capacity; solicitation of an individual who happens to be a lawyer with no regard or intent toward his or her legal connection is not covered by the exception. Further, there is no "business matter" that requires experienced use of accident victim representation (K&P's business model notwithstanding). The remaining exception, that of family or close personal or professional relationships, should be minimal and easily culled from any class list produced.

Plaintiffs' experiences and claims are typical of the class they seek to represent and the class itself is ascertainable. Regardless, the Court should defer ruling on Plaintiffs' class claims when the issue is fully briefed and properly before the Court.

**D.    Plaintiffs' Complaint consistently pleads a factual basis for the claims asserted.**

As stated above, at the pleading stage, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). When resolving a Rule 12(b)(6) motion, the court

"accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Plaintiffs' Complaint consistently pleads that K&P, or its agent, participates in a scheme by which accident victims receive unwanted phone calls soliciting legal representation. K&P's argument for dismissal demands a level of detail not required at the pleading stage. Plaintiffs' Complaint specifically alleges two direct calls from K&P, one of which resulted in an admission that Plaintiffs' personal information was obtained from an outside source. Compl. ¶ 23–24. Plaintiffs allege an agreement between two actors, K&P (or its agents) and Progressive (or its insiders) and allege the specific mechanism by which the information is exchanged. Compl. ¶ 28. The details K&P demands, such as who exactly makes the calls, who exactly provides accident information, and how the representation agreements are signed, do not fatally contradict each other and are questions to be answered through discovery. Plaintiffs' Complaint meets the plausibly standard by demonstrating a scheme by which K&P, or its agent, solicits accident victims, promising large sums of money in exchange for representation agreements. The details as pled are plausible on their face, and K&P's parsing of the specifics of Plaintiffs' allegations, like its parsing of Texas statutes, smacks of desperation. Plaintiffs' Complaint is not inconsistent and should be permitted to proceed to discovery.

**E.      Plaintiffs' Complaint sufficiently pleads civil conspiracy claims.**

K&P appears to argue that a party can only properly bring civil conspiracy claims if all members of the conspiracy actively committed the underlying unlawful act. This is nonsense. The very purpose of civil conspiracy claims is to hold parties liable for participating in unlawful acts that they did not actually commit. *Agar Corp., Inc. v. Electro Circuits Intl., LLC*, 580 S.W.3d 136, 140 (Tex. 2019) ("[C]ivil conspiracy is a vicarious liability theory that imparts joint-and-several

liability to a co-conspirator who may not be liable for the underlying tort."). To hold otherwise would completely nullify the purpose of civil conspiracy claims.

K&P is correct in its assertion that civil conspiracy is not an independent claim, but completely wrong in its application. Civil conspiracy is a derivative tort in that it "is connected to the underlying tort and survives or fails alongside it," and offers no independent recovery. *Agar Corp.*, 580 S.W.3d at 141 (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 148 (Tex. 1999)). "When used as a theory of vicarious liability, civil conspiracy is part of the factual situation that permits a remedy against co-conspirators. . . . [w]ithout it, there would be no grounds for recovery against co-conspirators who did not commit the underlying unlawful act." *Id*. Thus, civil conspiracy is a vicarious liability theory but also a cause of action. *Id*. (citing *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 105 n.2 (Tex. 2018); *N.P. v. Methodist Hosp.*, 190 S.W.3d 217, 225 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "[C]haracterizing civil conspiracy as a cause of action does not mean it is an independent tort." *Id*.

To properly plead civil conspiracy, Plaintiffs must allege "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id*. (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Because Plaintiffs allege a (1) coordinated scheme between at least two parties, K&P (or its agent) and Progressive (or its insiders), (2) involving the exchange of personal information, (3) pursuant to an agreement to share that information, (4) in pursuit of unlawful solicitation, (5) resulting in invasion of privacy, Plaintiffs have adequately pled civil conspiracy.

**F.      Plaintiffs Complaint sufficiently alleges vicarious liability.**

Plaintiffs allege that K&P's case runners either a) explicitly represent themselves as K&P employees in order to coerce accident victims into signing representation agreements that they then sell to K&P; or b) sell illegally obtained personal information to K&P so that K&P can perform the illegal solicitation itself. Compl. ¶ 28.  In either scenario, Plaintiffs have alleged facts sufficient to demonstrate K&P's liability for the case runner acting as its agent. If the former, K&P accepts signed representation packets illegally obtained by operatives claiming to be representatives of K&P. If the latter, K&P endorses its case runners' methods of illegally obtaining data by purchasing the data so that it can commit barratry without investigating the source of that data. In either case, whether knowingly or through negligent ignorance, K&P has ratified its case runners' actions such that K&P is liable for those actions. *See Schrum v. Land*, 12 F. Supp. 2d 576, 582 (S.D. Tex. 1997) ("A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them.").

**G.      Plaintiffs' Complaint sufficiently pleads injunctive relief.**

K&P argues that Plaintiffs have not shown that a permanent injunction is necessary or appropriate because "[t]here is no alleged or commonsense reason why Kanner & Pintaluga would contact Plaintiffs in the future for any reason." Mot. to Dimiss, ECF No. 54, p. 19. Naturally, K&P is in an excellent position to renounce any future contact with Plaintiffs on its own behalf, but even if Plaintiffs were willing to accept K&P at its word, Plaintiffs asserted the request for permanent injunction on behalf of the class they intend to represent. Plaintiffs' Complaint makes it clear that K&P and Progressive's scheme to defraud accident victims through the use of harassing, exploiting, and unduly influential promises of large settlements is a large-scale and ongoing scheme. Compl. ¶ 27. Whether K&P continues to illegally contact Plaintiffs is irrelevant in this

analysis—without a permanent injunction, Defendants will continue in their illegal harassment campaign against accident victims who have their personal information stolen by Progressive and sold to K&P. Accordingly, failure to grant the injunction will result in irreparable injury to accident victims, the protection of these victims' personal information vastly outweighs damages K&P may sustain by being disallowed from continuing in their already illegal activity, and this injunction will clearly and obviously serve the public interest by disallowing further harassment and exploitation of accident victims. All the elements of granting a permanent injunction are met.

**H.      In the alternative, Plaintiffs should be given leave to amend.**

Plaintiffs' Complaint stands on its own merit: it presents a well-supported, cogent and logical sequence of facts demonstrating a plausible inference that K&P is liable for the claims presented. Should the Court disagree, however, Plaintiffs respectfully request leave to amend to address any deficiencies. "If it appears that given an opportunity to amend the pleading, the plaintiff would be able to state a claim upon which relief could be granted, the court should grant leave to amend." *In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d at 830 (citing *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 U.S. Dist. LEXIS 16624 (N.D. Tex. Mar. 7, 2007)).

Respectfully submitted,

_/s/ Jarrett L. Ellzey_

**EKSM, LLP**
Jarrett L. Ellzey
Texas Bar No. 24040864
jellzey@eksm.com
Tom Kherkher
Texas Bar No. 24113389
tkherkher@eksm.com
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
4200 Montrose, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFFS,
AND THOSE SIMILARLY SITUATED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served via CM/ECF on all counsel of record on this day, the 30th   day of May 2025.

/s/ Jarrett L. Ellzey
Jarrett L. Ellzey