**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLY COOK and ESTHER KELLEY-COOK, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 4:24-cv-4423 |
| vs. | § § § | JURY TRIAL DEMANDED |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Delaware Corporation, and THE LAW OFFICES OF KANNER & PINTALUGA, P.A., a Florida Profit Corporation, | § § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS' RESPONSE TO SECTION II OF DEFENDANT KANNER & PINTALUGA, P.A.'S MOTION FOR SUMMARY FINAL JUDGMENT**

TO THE HONORABLE KEITH ELLISON:

## I.       INTRODUCTION

Following the hearing on Plaintiff's Motion to Continue Defendant Kanner & Pintaluga, P.A.'s Motion for Summary Final Judgment, the Court directed Plaintiff to respond solely to Defendant's standing argument, specifically, whether Plaintiff Esther Kelley-Cook has standing to pursue a civil barratry claim where the solicitation call she received concerned an accident in which she was not physically involved. That issue presents a narrow question of statutory interpretation, not a factual dispute. Under the plain text of Texas Government Code § 82.0651 and the incorporated provisions of Texas Penal Code § 38.12, standing turns on whether a person received an unrequested solicitation concerning legal representation arising from a specific accident, including solicitation directed to family members or other persons connected to the event. The statutes do not require that the recipient be the physically injured claimant or the solicitor's

intended target. Because Plaintiff personally received an unsolicited call offering legal representation in connection with an accident involving her vehicle and family, and because the Legislature expressly provided a private right of action for that injury, Plaintiff has standing as a matter of law and Defendant's standing challenge fails.

## II.    FACTUAL BACKGROUND

While both parties to this litigation have provided the Court with the factual underpinnings of this case through the myriad of filings the parties have made, Plaintiff believes it prudent to produce a clear and thorough timeline of events and facts for the Court's review. This section is not intended as a response to the Factual Background found in Defendant's Motion for Summary Final Judgment; rather, it is the facts necessary to provide the Court with the clearest picture possible of the chain of events leading to this Response. Plaintiff will file a robust response to Defendant's factual statements in her full response to Defendant's Motion for Summary Final Judgment following her 30(b)(6) deposition of Defendant.

On October 3, 2024, former Plaintiff Kelly Cook's ("Mr. Cook") parents were involved in a minor automobile accident while driving Mr. Cook and Plaintiff's vehicle. Dep. of Esther Kelley-Cook ("Dep. Dr. Kelley-Cook") 13:22–24, ECF No. 80-4; Dep. of Kelly Cook ("Dep. Mr. Cook") 10:14–17, ECF No. 80-5. The driver of the other vehicle was uncontestably at fault. Dep. Mr. Cook 11:12–22. Nobody involved in the accident sustained an injury and neither vehicle was damaged to incapacity, and thus no tow trucks or wreckers were called, and the involved individuals agreed no police report was necessary. Dep. Dr. Kelley-Cook 17:2–4. The involved individuals exchanged information, and Mr. Cook's parents requested the at-fault driver call her insurance provider at the scene of the accident to file a claim. Dep. Mr. Cook 12:3–10. The vehicle that Mr. Cook's parents were driving at the time of the accident is registered with the Texas Department of Motor Vehicles

in Plaintiff's name, but Plaintiff and Mr. Cook share ownership of the vehicle. Dep. Dr. Kelley-Cook 13:25–14:12; Dep. Mr. Cook 10:22–11:3.

On October 5, 2024, Plaintiff received a phone call from an individual regarding the accident. Dep. Dr. Kelley-Cook 14:21–15:7. Plaintiff's caller ID displayed that the call was made from a Florida-based phone number: (786) 371-0905.[1] Upon hearing that the subject of the call concerned the accident, Plaintiff immediately handed the phone to Mr. Cook because she believed the call concerned insurance and his legal knowledge better suited him for handling the call. Dep. Dr. Kelley-Cook 15:8–12. Mr. Cook missed a small portion of the caller's statements during the handoff, but definitively heard the caller promise him and any other individuals who may have been in the car during the accident $10,000 for signing up for legal representation. Dep. Mr. Cook 13:9–14:5. Mr. Cook, realizing that he was being illegally solicited for legal representation, stated he was not in the vehicle during the accident, but if the caller could send him an email, he would forward it to the involved parties. *Id.* at 14:13–15:6. Mr. Cook sought this email as written verification of the solicitation or the identification of the caller. *Id.* The caller declined to send the email. *Id.*

In the ensuing weeks, Plaintiff and Mr. Cook ascertained through insurance claims and adjusters that the at-fault driver was insured by Progressive, and ultimately had their car repaired. Dep. Dr. Kelley-Cook 18:5–22. On October 22, 2024, Plaintiff received a second phone call concerning the accident. Dep. Dr. Kelley-Cook 20:3–7. This time, the call came from a Texas-based number: (832) 397-6311.[2] *Id.* at 23:21–25. Plaintiff fielded this call herself, and requested the caller identify himself and state his purpose. *Id.* at 22:9–25. The caller identified himself as

---

[1]      The "786" area code designates a Miami, Florida, telephone number.
[2]      The "832" area code designates a Houston, Texas, telephone number.

Noah Rodriguez. *Id*. at 23:10–17. When the caller promised compensation in exchange for legal representation, Plaintiff requested the caller identify the attorney who would provide the representation. *Id*. at 24:8–19. The caller provided Plaintiff with Defendant's web address, www.texaskpattorney.com. *Id*. at 24:20–25:12. Plaintiff asked how the caller had come by her personal information in order to contact her, and the caller responded that the attorneys he worked for had access to accident records held by Progressive Insurance. *Id*. at 28:24–29:14.

Realizing they had been subjected to illegal solicitation, Plaintiff and Mr. Cook contacted the undersigned counsel regarding filing a class action lawsuit. Dep. Mr. Cook 29:12–30:4. The undersigned conducted a detailed work-product protected investigation on Defendant's practices and the source of the call. Plaintiff and Mr. Cook then filed their Original Complaint against Defendant and Progressive on November 11, 2024. ECF No. 1. Both Defendant and Progressive filed Motions to Dismiss Plaintiff and Mr. Cook's Original Complaint on January 15, 2025. ECF Nos. 22, 23.

While these motions were pending, Plaintiff's counsel received an anonymous letter that was postmarked in Miami, Florida. ECF No. 53-1. The letter provided specific details regarding Defendant and other law firms' illegal solicitation practices throughout Texas and Florida, and further described breadth of the case running operation, which up to this point, Plaintiff, Mr. Cook, and Plaintiff's counsel had believed to be smaller and more locally operated. Accordingly, Plaintiff's counsel continued independent investigation of the letter's claims and Defendant's operations in Texas and sought subpoenas against the businesses identified in the letter. ECF No. 44. The details of this investigation are attorney work product that is not subject to discovery.

To account for the new information provided in the anonymous letter, and other information verified by investigation, Plaintiff filed her First Amended Complaint on February 5,

2025. ECF No. 24. On March 5, 2025, Defendant and Progressive filed Motions to Dismiss Plaintiff's Amended Complaint. ECF Nos. 31, 32. Following a hearing conducted on April 11, 2025, the Court dismissed Mr. Cook as a plaintiff, along with several of Plaintiff's claims, and allowed Plaintiff 10 days to amend. Minute Entry filed 04/11/2025. Plaintiff filed her Second Amended Complaint on April 24, 2025. ECF No. 46. Defendant filed its third Motion to Dismiss on May 15, 2025. ECF No. 55. Plaintiff voluntarily dismissed her claims against Progressive on June 9, 2025. ECF No. 64.

In the midst of this motions practice, Plaintiff sought evidence to support her claims through discovery. On April 11, 2025, Plaintiff served Defendant with interrogatories and requests for production and subpoenaed Accident Solutions, the case running business identified in the anonymous letter. *See* ECF No. 49-2; ECF No. 44. In response, Defendant immediately filed a Motion for Protective Order to prevent Plaintiff from accessing files within Accident Solutions' control (ECF No. 49), and eventually provided Plaintiff with obstructive objections and vague non-answers to her written discovery (ECF Nos. 872-2, 87-2). Defendant did not respond to Plaintiff's written discovery requests until May 19, 2025, after filing its third Motion to Dismiss.

In July of 2025, Defendant requested dates for which Plaintiff and Mr. Cook could be available for depositions, to which Plaintiff's counsel responded with several dates. ECF No. 73-1. Defendant noticed Plaintiff and Mr. Cook for depositions on August 27, 2025. ECF No. 73-2. Immediately following the noticing of these depositions, Defendant filed a Rule 11 Motion for Sanctions against Plaintiff's counsel, arguing that Plaintiff's counsel had filed claims that were not supported by any evidence. ECF No. 72. Plaintiff's counsel was required to spend significant time and effort in defending this blatant attempt at forcing an evidence exposure through inappropriate mechanisms. Plaintiff immediately filed an emergency Motion to Stay and/or Quash Depositions,

requesting the Court to either stay or quash Plaintiff and Mr. Cook's noticed depositions until after ruling on the motion for sanctions. ECF No. 73. Then Plaintiff filed her Response to the Motion for Sanctions, in which she described the means by which Defendant was improperly seeking evidence from Plaintiff without itself producing any evidence. ECF No. 77. Finally, Plaintiff filed her Motion for *In Camera* Review of Privileged Materials, in which she requested the Court review the evidence supporting her claims that was subject to the attorney work product doctrine *in camera* rather than requiring Plaintiff to provide her protected work product to Defendant. ECF No. 78. Following a hearing, the Court denied Defendant's Motion for Sanctions without prejudice.

Finally able to return to productive litigation, Plaintiff sought to depose Defendant and requested dates from Defendant's counsel on which a 30(b)(6) deposition could take place. Defendant's counsel did not respond to this request for deposition availability. Instead, the next day, on November 14, 2025, Defendant filed its Motion for Summary Final Judgment, which again forced Plaintiff's counsel away from any meaningful progression in this case. Because Defendant has failed to meaningfully respond to a single discovery request from Plaintiff, Plaintiff was required to focus on drafting and filing her Motion to Continue (ECF No. 87) rather than continuing to pursue her claims.

In summary, this case has pended for 14 months without progressing past the pleadings stage for Plaintiff. Despite Plaintiff's continued efforts to move the case forward and seek evidentiary support for her claims that is mostly within Defendant's control, Defendant's obstructive tactics have required her to focus her energy in combating needlessly combative motions from Defendant.[3] Every motion filed by Defendant thus far has served the single purpose

---

[3] Barely over one year into litigation, this case has almost 100 pleadings. With the exception of

of preventing Plaintiff from accessing the discovery she is entitled to under the Rules of Civil Procedure.

### III.     LEGAL STANDARD

#### A.  Motion for Summary Judgment

In the Fifth Circuit, summary judgment is appropriate only when the moving party demonstrates that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In evaluating such a motion, the Court must view all evidence in the light most favorable to the nonmovant, draw all reasonable inferences in the nonmovant's favor, and may not weigh evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant's burden is not to prove its case at this stage, but only to identify evidence—direct or circumstantial—on which a reasonable jury could return a verdict in its favor. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Even "weak" or "less persuasive" evidence suffices if it creates a genuine factual dispute. *Reeves*, 530 U.S. at 149–50. Because all reasonable inferences must be drawn in favor of the nonmovant, summary judgment is reserved for cases where the record "could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

#### B.  Standing

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-

---

Plaintiff's appeal of this Court's pre-discovery dismissal of her class claims, which could not meaningfully slow the litigation because the Court declined to stay the case, Plaintiff has filed almost exclusively responsive or defensive motions. The only offensive motion Plaintiff has filed thus far is the subpoena of Accident Solutions, to which Defendant vehemently objected.

CV-02487-L, 2017 WL 3268034, at *4 (N.D. Tex. July 31, 2017) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Statutory or prudential standing 'encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches,' and requires that 'a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Id.* (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

## IV.    ARGUMENT

Texas barratry statutes are to be broadly applied in the furtherance of their underlying purposes, "which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." Tex. Tex. Gov't Code § 82.0651(e). Accordingly, Defendant's overly narrow reading of the statutes as requiring that solicitation reach its intended target before liability attaches is misaligned with the purposes of the statute itself. Even under Defendant's reading, however, the plain text of the statute provides that solicitation of family members is included in the definition of illegal solicitation. Plaintiff clearly has standing to pursue the claims in this case.

## A.    Legislative Context and Statutory Design of Texas Barratry Law

Texas's barratry statutes were enacted with the understanding that improper solicitation frequently occurs through organized and layered client-acquisition practices rather than through isolated, informal conduct by individual attorneys. The Legislature recognized that solicitation is often carried out by third-party callers, intake services, or referral intermediaries operating at arm's length from the law firm that ultimately benefits from the contact. As a result, the statutory framework focuses on the act of solicitation itself and whether it was made by or for the benefit of

a lawyer or law firm, rather than on express authorization or the solicitor's precise identification of the optimal claimant.

For the same reason, the Legislature drafted the statute to extend beyond physically injured claimants. Texas Penal Code § 38.12 and Texas Government Code § 82.0651 expressly encompass solicitation directed to family members and other persons connected to an accident, including vehicle owners and insureds. This reflects a legislative judgment that modern solicitation practices commonly involve contacting individuals with property-damage claims, insurance interests, or familial relationships to accident victims in order to identify potential legal claims and channel them toward representation. Limiting enforcement to situations in which the solicitor reaches the ultimate bodily-injury claimant would substantially narrow the statute and undermine its purpose.

Accordingly, civil liability under § 82.0651 does not depend on whether the plaintiff ultimately retained counsel, suffered bodily injury, or was the solicitor's preferred or intended client. The injury addressed by the statute is the receipt of an improper solicitation concerning a specific accident. Standing therefore turns on whether the plaintiff was contacted in a manner prohibited by the statute, not on the solicitor's subjective intent, internal authorization practices, or success in securing representation.

## B.     Texas Barratry Statutes cover solicitation to prospective clients and their family members.

The issue before the Court is whether Plaintiff has standing to pursue a barratry claim when she was not the intended target of the solicitation call. According to Defendant, Plaintiff could not have been the victim of solicitation because the call she received was intended for her in-laws, who were parties to the accident. The undisputed facts, however, clearly demonstrate that a) Plaintiff experienced a concrete injury that is explicitly prohibited by Texas statute; b) that is fairly traceable to Defendant; and c) for which the Texas statutes provide explicit redress. Plaintiff

clearly has standing to pursue her claims.

First, this Court must examine the various Texas barratry statutes and determine whether a call pushing legal representation must reach an individual with a valid claim to be deemed illegal solicitation. The Court "must apply [the statute] 'as written' and 'refrain from rewriting text that lawmakers chose.'" *Nguyen v. Watts*, 605 S.W.3d 761, 777 (Tex. App. 2020) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)). The Court should "give effect to all the statute's words and, if possible . . . not treat any statutory language as mere surplusage." *Id*. (quoting *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006)).

Plaintiff sued Defendant under Texas Government Code § 82.0651(c), which provides the following: "A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry." The plain text of this statute merely provides that "a person" who was solicited may file a civil lawsuit against the solicitor. However, the statute itself does not define "solicitation," but explicitly incorporates solicitation conduct as described in Texas Penal Code § 38.12(a) and (b) and Rule 7.03 of the Texas Rules of Professional Conduct. Accordingly, these statutes provide the definition of "solicitation" as intended by the legislature. *See Nguyen*, 605 S.W.3d at 778 ("Because Subsection 82.0651(c) expressly incorporates Penal Code Section 38.12 and Disciplinary Rule 7.03 into its statutory construct, definitions given in these provisions may supply insight into the meaning that the legislature intended for "solicit" in Subsection 82.0651(c).").

Texas Penal Code § 38.12(a) and (b) are as follows:

> (a) A person commits an offense if, with intent to obtain an economic benefit the person: (1) knowingly institutes a suit or claim

that the person has not been authorized to pursue; (2) solicits employment, in person, by telephone, through a direct message on a social media platform, or by another electronic communication, including through a false, misleading, or deceptive electronic communication, for the person or for another; (3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client; (4) pays or gives or offers to pay or give a person money or anything of value to solicit employment; (5) pays or gives or offers to pay or give a family member of a prospective client money or anything of value to solicit employment; or (6) accepts or agrees to accept money or anything of value to solicit employment.

(b) A person commits an offense if the person: (1) knowingly finances the commission of an offense under Subsection (a); (2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or (3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a).

Texas Penal Code § 38.12(a), (b). The plain text of these statutes does not state that the solicitation must reach its intended target to provide standing to a person who received an illegal solicitation phone call. Liability for barratry attaches when a person "solicits . . . by telephone," or "offers to pay or give a person money or anything of value to solicit employment." Importantly, the Texas Penal Code barratry statute contains a definition section, which provides the following definition for "solicit employment":

"Solicit employment" means to communicate in person or by telephone with a prospective client **or a member of the prospective client's family** concerning professional employment within the scope of a professional's license, registration, or certification arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing problem of the prospective client within the scope of the professional's license, registration, or certification, for the purpose of providing professional services to the prospective client, when neither the person receiving the communication nor anyone acting on that person's behalf has requested the communication.

Tex. Penal Code § 38.01(11) (emphasis added). Likewise, Texas Professional Rule 7.03 prohibits

solicitation and "solicitation communications," which are defined in Rule 7.01:

> A "solicitation communication" is a communication substantially
> motivated by pecuniary gain that is made by or on behalf of a lawyer
> to a specific person who has not sought the lawyer's advice or
> services, which reasonably can be understood as offering to provide
> legal services that the lawyer knows or reasonably should know the
> person needs in a particular matter.

Tex. R. Prof. Cond. 7.01(b)(2).

After "[c]onsidering the statutory context in which it appears," the Texas Court of Appeals

concluded that "the phrase 'solicited by' in Subsection 82.0651(c) should be construed to mean a

person has experienced a prohibited communication directed toward him or her as a prospective

client by or on behalf of an attorney in an effort to gain employment." *Nguyen*, 605 S.W.3d at

779.[4] This conclusion, coupled with the Court's determination that "gain[ing] employment"

through solicitation includes the Texas Penal Code's inclusion of telephone communication with

a prospective client's family members, means that a law firm may be liable for the solicitation of

an accident victim's family member.

Defendant will likely raise the argument that a solicitor cannot be liable for the solicitation

of an individual whom he or she did not intend to solicit. Not only is this position wholly absent

from the text of the statutes, but it also creates a series of circular logical leaps that run counter to

clear legislative purpose. The only "intent" requirement found in the text of the Texas barratry

statutes is that the solicitor make the unrequested solicitation with "intent to gain an economic

---

[4]     Defendant's reliance on *Nguyen* in its Motion for Summary Final Judgment is misplaced. In examining the definition of "solicited by" in the Texas barratry statutes, the *Nguyen* Court was considering whether a plaintiff could be "solicited by" a law firm that never directly contacted him, but instead filed paperwork on his behalf without his authorization. The *Nguyen* Court specifically relied on the definition of "solicit" in the Texas Penal Code that states solicitation includes unrequested calls to prospective clients' family members. *Nguyen*, 605 S.W.3d at 778–79.

benefit." Tex. Penal Code § 38.12(a). This "intent" is inherent in a caller's attempt to obtain a legal representation agreement, regardless of whether the person solicited has a legitimate legal claim. Moreover, requiring proof that a solicitor reached his or her intended target for liability to attach denudes the statute of any enforcement power whatsoever: a solicitor need only claim he did not intend to call the person who received the call to avoid liability.[5] Thus, in the context of the intended recipient of illegal solicitation, the Texas barratry laws are strict liability statutes. The act of making an unrequested solicitation for the purpose of economic benefit creates liability, regardless of whether the call could or could not actually result in economic benefit by reaching an individual with a valid claim. To interpret the statute otherwise runs counter to the statute's own text, which requires liberal construction to promote its underlying purposes of protecting those in need of legal services against unethical and unlawful solicitation. Tex. Gov't Code § 82.0651(e).

**C.      Plaintiff has provided clear evidence that she was illegally solicited by Defendant.**

Plaintiff's personal cell phone records and deposition testimony establish the following undisputed facts: (1) Plaintiff's registered car was involved in a car accident on October 3, 2024; (2) on October 5 and 22, 2024, Plaintiff received unsolicited inbound calls on her personal cell phone from an unknown third-party; and (3) both callers possessed knowledge of the accident and solicited Plaintiff for legal services. Moreover, the first call Plaintiff received came from a Florida phone number while the second call directly tied the caller to Defendant, which is a Florida-based law firm. Thus, Plaintiff suffered a concrete injury[6] that was fairly traceable to Defendant and for

---

[5]      This heavy-handed liability avoidance tactic is evident even in the calls received by Plaintiff and Mr. Cook: the solicitors who called Plaintiff and Mr. Cook opened their calls with vague platitudes, not requesting to speak directly with a specific person but rather about a specific incident, namely, the car accident Plaintiff's in-laws were involved in. *See* Dep. Dr. Kelley-Cook, 14:21–25, 24:8–19; Dep. Mr. Cook 13:22–14:5.

[6]      As explained at length above, Plaintiff's claims are not generalized grievances raising the legal rights of another because the Texas barratry statutes under which she sued because the statute explicitly provides that illegal solicitation is covered by solicitation to a family member.

which the Texas barratry statutes provide redress.

Despite these clear facts demonstrating illegal solicitation, Defendant has still found hairs to split. It is irrelevant that Plaintiff passed her phone to her husband during the first call because Plaintiff herself was called regarding legal representation for a family member following an accident. It is irrelevant that Plaintiff was not involved in the accident herself because Texas barratry statutes prohibit the solicitation of an accident victim's family member. It is irrelevant that Plaintiff has no direct proof that the caller received her information from Progressive Insurance because the absence of other proof proves the claim: Progressive Insurance was the only third-party entity that received information about the accident and the only source from which the caller could have received Plaintiff's information. It is irrelevant that the caller did not directly identify Defendant during the call because the caller indirectly implicated Defendant by providing Defendant's website when asked to provide information about the attorney for whom he worked. All of these issues are mere distractions from the obvious: Defendant has been implicated in a solicitation ring and has refused to provide refuting evidence.

Defendant can (and likely will, absent Court censure) continue to split hairs regarding who specifically received which call, who spoke with whom, and what specific statements were made that implicate Defendant. Indeed, had Plaintiff's in-laws filed this lawsuit instead of Plaintiff, Defendant would undoubtedly argue that the in-laws do not have standing because they did not receive the phone call. Ultimately, however, there is hardly anything to argue: following an accident that involved her vehicle, Plaintiff received an unrequested phone call that offered her money in exchange for legal representation and provided evidence of Defendant's ties to the caller. That Plaintiff's evidence thus far is circumstantial is to be expected considering Defendant's motivations to conceal its involvement with the solicitation caller. The very fact that Defendant

opted to file its Motion for Summary Final Judgment rather than sit for a deposition can be construed as evidence that it has something to hide. Defendant may dispute these inferences or argue that different inferences should be drawn, but such disputes regarding the weight and reasonable inferences from circumstantial evidence are precisely the types of disputes that must be resolved by a jury, not on summary judgment. *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir. 1987).

## V.    CONCLUSION

The undisputed record evidence of this case establishes that, following a car accident involving her family, Plaintiff received an illegal solicitation phone call that implicated Defendant. Texas barratry statutes explicitly provide redress for solicitation received on behalf of family members. Plaintiff has standing to pursue her barratry claims against Defendant.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*
**EKSM, LLP**
Jarrett L. Ellzey
Texas Bar No. 24040864
jellzey@eksm.com
Tom Kherkher
Texas Bar No. 24113389
tkherkher@eksm.com
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
4200 Montrose, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of January 2026, a true and correct copy of the foregoing Plaintiff's Response to Section II of Defendant Kanner & Pintaluga, P.A.'s Motion for Summary Final Judgment was served on all counsel of record via the Court's CM/ECF electronic filing system, which provides notice of filing to all registered counsel.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
